GREEN, Judge.
The State appeals the order in limine of the county court that barred the State from using as evidence, in the trial of a driving under the influence (DUI) case, the results of Anthony T. Bodden’s urine test, which was administered pursuant to the implied consent law. See § 316.1932(l)(a), Fla. Stat. (2000). In the order, the county judge certified to this court the following *917 question of great public importance pursuant to Florida Rule of Appellate Procedure 9.160.
IN ADMINISTERING FLORIDA’S IMPLIED CONSENT LAW, IS THE FLORIDA DEPARTMENT OF LAW ENFORCEMENT REQUIRED TO ADOPT RULES IN ACCORDANCE WITH THE FLORIDA ADMINISTRATIVE PROCEDURES ACT GOVERNING THE COLLECTION, PRESERVATION, AND ANALYSIS OF URINE SAMPLES OBTAINED BY LAW ENFORCEMENT PURSUANT TO SECTION 316.1932(l)(a), FLORIDA STATUTES?
We answer the question in the affirmative.
On August 7, 2000, pursuant to section 316.193, Florida Statutes (2000), police issued Mr. Bodden a traffic citation for driving under the influence. Pursuant to section 316.1932(l)(a), Mr. Bodden submitted to a test to determine the alcohol content of his blood. Mr. Bodden’s blood alcohol level was .060 and .065. Mr. Bodden also submitted to a urine test, the results of which were positive for a controlled substance. The State charged him with one count of possession of cannabis and one count of possession of drug paraphernalia, as well as with the DUI charge.
Mr. Bodden filed motions in limine in which he requested the court to forbid any reference at trial to his urine laboratory test results because no regulatory criteria had been promulgated to insure the reliability of the testing procedure. At the hearing on the motions, Mr. Bodden stipulated that he submitted to a urine test and the results were positive for a controlled substance. The State stipulated that if its expert, Marcia Barnhart (a witness in the instant case), had testified about the procedures used in Florida to test urine for the presence of controlled or chemical substances, her testimony would be the same as the deposition testimony of Dale Livingston, which testimony was taken in a different case. Dale Livingston’s deposition is part of the record on appeal.
Mr. Livingston testified in his deposition that as senior analyst for the Florida Department of Law Enforcement (FDLE) laboratory in Tallahassee, it is his responsibility to maintain a methods manual for the purpose of the laboratory testing of urine. He testified that this procedure has not been published in the Administrative Law Weekly or promulgated in accordance with the Administrative Procedures Act because there is no requirement that it be done. He further testified that, as far as he is aware, his laboratory procedures are different from the procedures used by other laboratories and that he believes his procedures produce superior results.
The sole issue in this appeal is the interpretation of section 316.1932(l)(a)(l), which states:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so • operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath, and to a urine test for the purpose of detecting the presence of chemical substances as set forth in s. 877.111 or controlled substances, if the person is lawfully arrested for any offense allegedly committed while the person was driving or was in actual physical control of a motor vehicle while under the influence of alcoholic beverages, chemical substances, or controlled substances.
(Emphasis added.)
The term “approved” applies to a standard rule promulgated under the Administrative Procedures Act. See § 120.50, Fla. *918 Stat. (2000). The State argues that only a test to determine the alcoholic content of a person’s blood or breath has to be approved and not a urine test to determine the presence of chemical or controlled substances.
When a criminal statute is ambiguous and capable of different constructions, it should be construed in favor of an accused. See § 775.021(1), Fla. Stat. (2000); Cabal v. State, 678 So.2d 315 (Fla.1996). With this in mind, we hold that the phrase “approved chemical test or physical test including, but not limited to” in section 316.1932(l)(a)(l) applies to “a urine test for the purpose of detecting the presence of chemical substances ... or controlled substances.”
The State refers to section 316.1932(l)(b)(2), Florida Statutes (2000), which provides that for an analysis of a person’s breath to be considered valid under section 316.1932, it “must have been performed substantially according to methods approved by the Department of Law Enforcement. For this purpose, the department may approve satisfactory techniques or methods.” The State notes that there is no such language in section 316.1932 regarding the validity of a urine test. Section 316.1932(l)(f)(l) states that the FDLE shall adopt rules specifying the methodology to be used in administering breath or blood tests to determine the alcohol content of the blood. Section 316.1932 does not require that the FDLE adopt rules in regard to the administering of urine tests.
The FDLE has adopted rules implementing the implied consent law in chapter 11-D, Florida Administrative Code. Section 11D-8.003 is entitled “Approval of Breath Test Methods and Instruments.” Chapter 11D contains no procedure for testing urine specimens. In Southwest Florida Water Management District v. Charlotte County, 774 So.2d 903 (Fla. 2d DCA 2001), we noted “that a ‘statutory phrase should also be viewed not only in its internal context within the section, but in harmony with interlocking statutes.’ ” 774 So.2d at 916 (quoting WFTV, Inc. v. Wilken, 675 So.2d 674, 679 (Fla. 4th DCA 1996)). Thus, in this instance, in reading section 316.1932(l)(a)(l) in conjunction with sections 316.1932(l)(b)(2) and 316.1932(l)(f)(l), we conclude that an “approved” urine test is one in which the method of administration and the analysis of the test are “performed substantially according to methods approved by” the FDLE. We acknowledge, however, that the methodology for administering a urine test should be somewhat less complex than the methodology necessary for administering a breath or blood test.
We hold also that a urine test taken pursuant to the implied consent law, which is not an approved test, is not admissible as a scientific test pursuant to the traditional rules regarding the admissibility of evidence since consent was not voluntarily given. See State v. Polak, 598 So.2d 150, 153-54 (Fla. 1st DCA 1992) (holding that where breath tests given were not approved tests, the defendants’ consent “was based on misinformation, namely, that their licenses would be suspended for failure to submit to an approved test, [and] the defendants’ consent cannot be deemed voluntary pursuant to” the rule enunciated in State v. Burnett, 536 So.2d 375 (Fla. 2d DCA 1988)).
We therefore affirm the trial judge’s order in limine and remand for further proceedings.
PARKER and CASANUEVA, JJ., Concur.