840 So.2d 998 (2003)
FLORIDA CONVALESCENT CENTERS, etc. Petitioner,
v.
Reed SOMBERG, etc., Respondent.
No. SC01-731.
Supreme Court of Florida.
February 6, 2003.
Louise H. McMurray and Carmen Y. Cartaya of McIntosh, Sawran, Peltz, & Cartaya, P.A., Miami, FL, for Petitioner.
Douglas F. Eaton of Sheftall & Torres, P.A., Miami, FL, for Respondent.
Joel S. Perwin of Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., Miami, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
Jane Kreusler-Walsh and Rebecca J. Mercier-Vargas of Jane Kreusler Walsh, P.A., West Palm Beach, FL, for the Coalition *999 to Protect America's Elders, Amicus Curiae.
PER CURIAM.
We have for review the decision in Somberg v. Florida Convalescent Centers, Inc., 779 So.2d 667 (Fla. 3d DCA 2001), in which the Third District Court of Appeal certified conflict with the decision in First Healthcare Corp. v. Hamilton, 740 So.2d 1189 (Fla. 4th DCA 1999). We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. We approve the decision in Somberg, which held that the damages available to a personal representative bringing a cause of action under section 400.023(1), Florida Statutes (1997), are not limited by the damages provided for in Florida's Wrongful Death Act.[1]

FACTS
Respondent, Reed Somberg, is the personal representative for the estate of Irving Ellis. Somberg, 779 So.2d at 668. In 1998, Ellis was admitted to a nursing home that was run by the petitioner, Florida Convalescent Centers, Inc. Id. According to Somberg's allegations in the trial court, Ellis contracted an infection, the nursing home failed to treat the infection, and Ellis died from complications a short time later. See id. Respondent filed an action against the nursing home in a suit that included a claim for wrongful death and a claim for violating the "right to receive adequate and appropriate health care"[2] set out in chapter 400 of the Florida Statutes (1997), Florida's Nursing Home Act. See 779 So.2d at 668.
Subsequently, respondent dropped the wrongful death claim and pursued only the chapter 400 claim. See id. The nursing home moved for summary judgment alleging "that chapter 400 damages for pain and suffering were eliminated in this case by the Wrongful Death Act." Id. Somberg opposed this motion, asserting that section 400.023, Florida Statutes, specifically authorizes the personal representative of a deceased patient to bring suit where the cause of the patient's death resulted from a violation of the patient's statutory rights. See id. The trial court entered a partial summary judgment in the nursing home's favor.
On appeal, the Third District reversed the summary judgment while acknowledging that "the issue before us is a substantial one on which the districts are divided." Id. The Third District illustrated the division between the districts by comparing the holding in First Healthcare Corp. v. Hamilton, 740 So.2d 1189, 1196 (Fla. 4th DCA 1999) ("[T]he elements of damages recoverable by the personal representative of a deceased nursing home resident whose death results from deprivation of the deceased's rights are limited to those which a personal representative is specifically authorized to recover under the Wrongful Death Act."), with the holding in Beverly-Enterprises Florida, Inc. v. Spilman, 661 So.2d 867, 869 (Fla. 5th DCA 1995) ("Both the plain language of the statute and the transcripts of the committee hearings indicate that the legislature did not intend for damages under section 400.023 to be limited by the Wrongful Death Act where the nursing home's infringement or deprivation of the patient's rights resulted in the patient's death."). In its holding, the Third District adopted the reasoning of the Fifth District's opinion in Spilman, while certifying conflict with the Fourth District's opinion in Hamilton.

*1000 ANALYSIS
The issue raised in this case is whether a personal representative for a deceased nursing home patient who brings a cause of action for a violation of the patient's statutory rights pursuant to section 400.023, Florida Statutes (1997), is limited to the damages provided for in the Wrongful Death Act when it is claimed that the patient's death resulted from a deprivation or infringement of the patient's statutory rights set out in chapter 400. Upon review of the conflicting decisions and the relevant statutes, we hold that the plain language of section 400.023(1) explicitly demonstrates that the damages of the Wrongful Death Act do not control the damages available under chapter 400.[3]

Plain Language of Chapter 400
It is well settled that legislative intent is the polestar that guides a court's statutory construction analysis. See State v. Rife, 789 So.2d 288, 292 (Fla.2001); McLaughlin v. State, 721 So.2d 1170, 1172 (Fla.1998). When the Court construes a statute, "we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley, 666 So.2d 898, 900 (Fla. 1996). Furthermore, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc., v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
Section 400.023(1), Florida Statutes (1997), reads, in relevant part:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of the deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages.... The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the agency.
§ 400.023(1), Fla. Stat. (1997). Notably, section 400.023(1) specifically states that a claimant will be entitled to recover actual and punitive damages for any violation of the rights of a nursing home resident. Moreover, as noted by the Fifth District in Spilman, the Legislature not only included broad provisions for damages in chapter 400, but expressly stated that these statutory damages were authorized in addition to any other remedies that already existed. Furthermore, there is no reference in chapter 400 to the Wrongful Death Act or any other indication that the damages contemplated by or recoverable under section 400.023(1) are to be limited to those listed in the Wrongful Death Act. Thus, a cause of action brought under section 400.023(1) *1001 constitutes an independent cause of action with its own set of statutory damages.
If the Legislature had intended for the Wrongful Death Act to control damages available in a personal representative's action against a nursing home, it could have very easily provided for the application of the provisions of the Wrongful Death Act in chapter 400. See St. Mary's Hospital, Inc. v. Phillipe, 769 So.2d 961, 973 (Fla. 2000) (stating that "[i]f the Legislature intended for the Wrongful Death Act to control the elements of damages available in a medical malpractice arbitration" it could have provided for the application of the Wrongful Death Act to the Medical Malpractice Act). Logically, if the Legislature had intended for the Nursing Home Act to be limited by the Wrongful Death Act, it would have said so, rather than broadly providing not only for damages but also for a personal representative to claim those damages.
Accordingly, a plain reading of section 400.023(1) indicates that the damages provided for are not limited by the Wrongful Death Act. Thus, we hold that based on the plain language of section 400.023(1), the damages recoverable in a cause of action brought under that section are not limited by the Wrongful Death Act.

Spilman and Hamilton

In the opinion below, the Third District identified the conflict between the Fourth and Fifth Districts as to whether the Wrongful Death Act controlled damages for causes of action brought under section 400.023(1). Somberg, 779 So.2d at 668 (adopting the position of the Fifth District's decision in Spilman and certifying conflict with the Fourth District's decision in Hamilton). In Spilman, the Fifth District disagreed with a nursing home's argument that any damages available to a personal representative under chapter 400 were controlled by the Wrongful Death Act. Spilman, 661 So.2d at 868. Writing for the court, Judge Peterson emphasized the plain meaning of the language in section 400.023(1) expressly authorizing the recovery of damages, as well as the express language providing that the chapter 400 remedies were in addition to and cumulative of any other legal and administrative remedies available to a resident. See id. Judge Peterson also found confirmation of his policy analysis in the legislative history surrounding the 1986 amendment to section 400.023(1), which gave personal representatives the right to bring a suit for violations of a decedent's chapter 400 rights. See id. at 869.
In Hamilton, the Fourth District came to a different result, in part because the court disagreed with Spilman's reliance on "legislative committee reports" because "a long line of Florida case law holds that the legislative history of a statute is irrelevant where the wording of a statute is clear." Hamilton, 740 So.2d at 1195-96. The Fourth District also relied on the rule of statutory construction that presumes that the Legislature does not intend for a statute to change the common law unless the statute is explicit and clear in that regard. See id. The Hamilton court noted that because causes of action for wrongful death did not exist at common law, all causes of action for wrongful death are created and controlled by the Wrongful Death Act. See id.
As noted above, we find the plain language of section 400.023(1) to explicitly and clearly create a cause of action separate and independent from the Wrongful Death Act with its own damages. Therefore, there is no need to resort to an examination of legislative history or other rules of statutory interpretation and construction to determine that section 400.023(1) damages are not controlled by the Wrongful Death Act.

*1002 CONCLUSION
Accordingly, based upon the reasoning set out above, we approve of the decisions in Somberg and Spilman regarding those courts' holdings that chapter 400 damages are not controlled by the Wrongful Death Act and disapprove of the decision in Hamilton to the extent it is inconsistent with this opinion.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, LEWIS, QUINCE, and CANTERO, JJ., concur.
ANSTEAD, C.J., concurs specially with an opinion, in which LEWIS, J., concurs.
SHAW, Senior Justice, concurs in result only.
ANSTEAD, C.J., specially concurring.
I concur in the majority's opinion that the plain meaning of the language in section 400.023(1) demonstrates that damages available to a personal representative under section 400.023(1) are not limited by the Wrongful Death Act.
In addition to the plain language, however, I also find support for this conclusion in the legislative history and purpose of chapter 400 and the Wrongful Death Act as described by Judge Peterson in his opinion on Spilman. In particular, I find the examination of this history helpful in determining the Legislature's intent, especially given the fact that district courts have arrived at contrary conclusions of how chapter 400 and the Wrongful Death Act should operate together. Compare Beverly Enterprises-Florida, Inc. v. Spilman, 661 So.2d 867, 869 (Fla. 5th DCA 1995), with First Healthcare Corp. v. Hamilton, 740 So.2d 1189, 1195 (Fla. 4th DCA 1999).[4] Notably, both the Spilman and Hamilton courts appear to have based their decisions on the "plain language" of the statute, yet they arrived at different conclusions. In Hamilton, which criticized the Fifth District for using legislative history in Spilman, the Fourth District stated:
There is nothing unclear or ambiguous in the legislative language, and thus the legislative intent must be determined primarily from the language of the statute. It appears evident that the Spilman court, in reaching its decision as to the legislative intent, leaned heavily on the legislative committee reports. But, a long line of Florida case law holds that the legislative history of a statute is irrelevant where the wording of a statute is clear.
Hamilton, 740 So.2d at 1195-96 (citation omitted). It is true that this Court has stated where the language of a statute is clear, there is no need to rely on other canons of statutory interpretation. City of Miami Beach v. Galbut, 626 So.2d 192, 193 (Fla.1993). However, because there is obviously some confusion surrounding the interpretation of the two statutes, I believe that the Fifth District in Spilman appropriately looked to legislative history to support its analysis of the issue.[5] Thus, *1003 like the Fifth District, I find a closer examination of the Legislature's intent to be instructive.

Wrongful Death Act
The Legislature's expressed intent in enacting the Wrongful Death Act was "to shift the losses resulting when wrongful death occurs from the survivors of the decedent to the wrongdoer." § 768.17, Fla. Stat. (1997). The survivors that can recover damages are statutorily defined to be "the decedent's spouse, children, parents, and, when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." § 768.18(1), Fla. Stat. (1997). Section 768.19, Florida Statutes (1997), explains when an action for wrongful death may be brought, while 768.20, Florida Statutes (1997), explains:
The action shall be brought by the decedent's personal representative, who shall recover for the benefit of the decedent's survivors and estate all damages, as specified in this act, caused by the injury resulting in death. When a personal injury to the decedent results in death, no action for the personal injury shall survive and any such action pending at the time of death shall abate.
§ 768.20, Fla. Stat. (1997). Section 768.21, Florida Statutes (1997), contains a list of damages that are recoverable in a wrongful death action. The damages include such items as the value of lost support and services, damages for the surviving spouse and minor children, damages available to parents of a minor child or an adult child if there are no other survivors, medical and funeral expenses, and lost earnings. This Court has noted that the primary purpose underlying the enactment of the Wrongful Death Act was "to provide recovery to those who need it, specifically the surviving spouse, children, and dependents of the decedent." White v. Clayton, 323 So.2d 573, 575 (Fla.1975). The Court has also explained that the Wrongful Death Act was designed to ensure that any recovery "be for the living and not for the dead." Martin v. United Security Servs., Inc., 314 So.2d 765, 768 (Fla.1975).

Chapter 400the Nursing Home Act

In contrast, the Nursing Home Act, chapter 400 of the Florida Statutes, relates *1004 to nursing homes and health care facilities and the persons those facilities serve. Part II of the act states that its purpose is "to provide for the development, establishment, and enforcement of basic standards for ... [t]he health, care, and treatment of persons in nursing homes and related health care facilities" and for "[t]he construction, maintenance, and operation of such institutions which will ensure safe, adequate, and appropriate care, treatment and health of persons in such facilities." § 400.011, Fla. Stat. (1997).
Section 400.022 expressly sets out a nursing home resident's statutory rights, which include, in part, such rights as the right to civil and religious liberties, the right to uncensored communication, the right of a resident to be adequately informed of his or her medical condition, the right to adequate and appropriate health care, the right to be treated courteously, fairly, and with the fullest measure of dignity, and the right to refuse medication or treatment.
Section 400.023(1), the statutory provision at issue in this case, was enacted in 1980 to create a private cause of action for persons whose chapter 400 rights have been violated.[6] As it was originally enacted, section 400.023(1) stated, in part:
(1) Any patient whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any facility responsible for the violation. The action may be brought by the patient or his guardian or by a person or organization on behalf of a patient with the consent of the patient or his guardian. The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a patient.... The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a patient and the department.
§ 400.023(1), Fla. Stat. (Supp.1980). Section 400.023(1), Florida Statutes (1997), which is applicable to the cause of action in this case, reads, in relevant part:
Any resident whose rights as specified in this part are deprived or infringed upon shall have a cause of action against any licensee responsible for the violation. The action may be brought by the resident or his or her guardian, by a person or organization acting on behalf of a resident with the consent of the resident or his or her guardian, or by the personal representative of the estate of the deceased resident when the cause of death resulted from the deprivation or infringement of the decedent's rights.

*1005 The action may be brought in any court of competent jurisdiction to enforce such rights and to recover actual and punitive damages for any deprivation or infringement on the rights of a resident. Any plaintiff who prevails in any such action may be entitled to recover reasonable attorney's fees, costs of the action, and damages.... The remedies provided in this section are in addition to and cumulative with other legal and administrative remedies available to a resident and to the agency.
§ 400.023(1), Fla. Stat. (1997). As the Court notes, there is no reference in chapter 400 to the Wrongful Death Act or any other indication that the damages contemplated by or recoverable under section 400.023(1) are to be limited to those listed in the Wrongful Death Act.

Spilman
In Spilman, a nursing home resident died after being admitted to a hospital for treatment of infections allegedly contracted while he was in a nursing home. See 661 So.2d at 868. On appeal, the nursing home argued that the damages available under section 400.023(1) were controlled by the Wrongful Death Act rather than the survival statute. See id.[7] Pursuant to chapter 400, the jury had awarded damages for the decedent's physical and mental pain while he was alive, damages not available under the Wrongful Death Act. See 661 So.2d at 868. In addition to the plain meaning of the language in section 400.023(1) which expressly authorizes the recovery of damages, as well as the express language providing that the chapter 400 remedies were in addition to and cumulative of any other legal and administrative remedies available to a resident, Judge Peterson also found confirmation of his policy analysis in the legislative history surrounding the 1986 amendment to section 400.023(1), which gave personal representatives the right to bring a suit for violations of a decedent's chapter 400 rights. See id. at 869.[8] Additionally, *1006 Judge Peterson, quoting the answer brief of the Office of State Long-Term Care Ombudsman, pointed out that under the nursing home's theory:
[I]t would be cheaper for a nursing home to kill its residents and thereby limit claims by personal representatives to the damages listed in the Wrongful Death Act. Such construction not only offends the strong public policy that nursing homes are to "promote maintenance or enhancement of the quality of life of each resident," but basic statutory construction. See Williams v. State, 492 So.2d 1051, 1054 (1986) (statutes should not be given a meaning that leads to an absurd or unreasonable result).
661 So.2d at 869. The Fifth District ultimately concluded through Judge Peterson's opinion, and based on the plain language of the statute and the legislative history, "that the legislature did not intend for damages under section 400.023 to be limited by the Wrongful Death Act where the nursing home's infringement or deprivation of the patient's rights resulted in the patient's death." Id.

First Healthcare Corp. v. Hamilton
On the other hand, in Hamilton, the Fourth District recognized the Spilman decision, but held "in direct conflict with Spilman, that the personal representative of a deceased nursing home resident ... may not recover damages for a decedent's pain and suffering arising from the same injuries causing death." Hamilton, 740 So.2d at 1195.
The Fourth District's rationale was based on its recognition that wrongful death actions did not exist at common law and therefore "all claims for wrongful death are created and limited by Florida's Wrongful Death Act." Id. The Fourth District then gave four reasons that it disagreed with the Fifth District's Spilman decision.
First, the court disagreed with the Fifth District's reliance on "legislative committee reports" because "a long line of Florida case law holds that the legislative history *1007 of a statute is irrelevant where the wording of a statute is clear." Id. at 1195-96. Second, the court noted that there was no language in the amendment to the statute that stated specifically and explicitly "that the statute was intended to change the common law and allow the personal representative of a deceased nursing facility resident to recover damages for the resident's pain and suffering from injuries causing the resident's death." Id. at 1196. Third, the Fourth District observed that the Spilman holding "would clearly conflict with the Wrongful Death Act, which was enacted" to eliminate pain and suffering damages and "would allow multiple actions and multiple claims for pain and suffering contrary to clear legislative intent of the Wrongful Death Act." Id. Fourth, the court disagreed with the contention that limiting damages to those under the Wrongful Death Act would make it cheaper for the nursing home to "kill its residents" because the damages would be less. See id. The Hamilton court failed to address the language in section 400.023(1) that indicated that the statutory cause of action was cumulative with and in addition to other remedies.

Statutory Remedies
This Court has agreed with the Fourth District Court of Appeal's recognition that "[w]hen the legislature creates a statutory cause of action ... it is presumed to know the common law of contract and tort and the limitations on such remedies created by judges." Comptech Int'l., Inc. v. Milam Commerce Park, Ltd., 753 So.2d 1219, 1223 (Fla.1999) (quoting Facchina v. Mut. Benefits Corp., 735 So.2d 499, 502 (Fla. 4th DCA 1999)). In the context of this case, the Legislature is presumed to be aware of the existing state of the law when it added the right of a personal representative to bring a cause of action for a violation of a resident's rights under chapter 400.
Further, as noted by the Fifth District in Spilman, the Legislature not only included broad provisions for damages in chapter 400, but specifically stated that these statutory damages were authorized in addition to those remedies that already existed.[9] The Fourth District's reliance on the fact that section 400.023(1) does not explicitly state that it "was intended to change the common law" does not provide any explanation for why Wrongful Death Act damages would apply to the exclusion of the damage provisions that are listed in section 400.023(1). Of course, neither the Wrongful Death Act nor the section 400.023(1) cause of action was available at common law. Both sections provide remedies and damages, but the fact that those remedies were not available at common law would appear irrelevant to a determination of which set of statutory damages applies.
Furthermore, even if there were some relevancy to the fact that the cause of action was statutorily created and not available at common law, when a statute is both in derogation of the common law and remedial in nature, this Court has held that rules of strict construction "should not be applied so as to frustrate the legislative intent." Irven v. Dep't. of Health & Rehabilitative Servs., 790 So.2d 403, 406 (Fla. 2001) (citing Golf Channel v. Jenkins, 752 So.2d 561, 566 n. 4 (Fla.2000), and Stokes v. Liberty Mut. Ins. Co., 213 So.2d 695 (Fla.1968)). "The statute should be construed liberally in order to give effect to the legislation." Id.
*1008 The private cause of action was added to the nursing home statute to give residents a way to protect their chapter 400 rights. Limiting damages to only those available under the Wrongful Death Act does not give effect to legislative intent. As previously noted, the availability of Wrongful Death Act damages requires statutory survivors and the Act was designed "to provide recovery to those who need it, specifically the surviving spouse, children, and dependents of the decedent." White v. Clayton, 323 So.2d 573, 575 (Fla.1976). Because nursing home residents are less likely to have surviving spouses and rarely will have dependent minor children, the damages recoverable will necessarily be much less. In the instant case, the respondent claims that no damages are recoverable under the Wrongful Death Act with regard to Mr. Ellis's death. If Mr. Ellis had survived the alleged mistreatment, there would be no such limitation on damages. Under the Fourth District's decision, the death of Mr. Ellis might absolve the nursing home from payment of damages, whereas if he were able to survive the mistreatment, the costs could potentially be considerable. This result does not appear to be what the Legislature intended in enacting either the Wrongful Death Act or the Nursing Home Act.
Further, the Hamilton court's assertion that the Spilman holding would create conflict with the Wrongful Death Act because it would allow multiple actions and multiple claims for damages ignores the fact that both can coexist in harmony without "double recovery" problems. This assertion, of course, ignores the plain language in chapter 400 providing that its remedies are available in addition to other remedies.
Courts are obligated "to adopt an interpretation that harmonizes two related, if conflicting, statutes while giving effect to both." Palm Harbor Special Fire Control Dist. v. Kelly, 516 So.2d 249, 250 (Fla. 1987). To the extent that the purposes of the Wrongful Death Act and chapter 400 can potentially be at odds, courts should avoid denigrating one in favor of the other and instead give effect to both. Moreover, I am confident in a trial court's ability to prevent improper double recoveries for the same types of damages under both the Wrongful Death Act and chapter 400.
Thus, for the above reasons, I concur in the majority's decision that damages available under a section 400.023(1) action are not limited to those available under the Wrongful Death Act.
LEWIS, J., concurs.
NOTES
[1] §§ 768.16-768.27, Fla. Stat. (1997).
[2] § 400.022(1)(l), Fla. Stat (1997).
[3] In 2001, the Legislature substantially revised section 400.023(1). See § 400.023, Fla. Stat. (2001).
[4] Moreover, although the Third District in the decision below followed the Fifth District's decision in Spilman, the court noted that "strong arguments can be made on each side of the issue presented here." Somberg v. Fla. Convalescent Ctrs., 779 So.2d 667, 668 (Fla. 3d DCA 2001).
[5] Although we have stated that the plain meaning of the statute cannot be altered by examining legislative history, see, e.g., Rollins v. Pizzarelli, 761 So.2d 294, 299 (Fla.2000), there is no rule totally precluding the examination of legislative history where the statutory language is clear. Moreover, this Court has relied on the plain meaning of statutes and legislative history in determining the legislature's intent on a number of occasions. See, e.g., State v. Cotton, 769 So.2d 345, 347 (Fla.2000) (noting that Court's holding was based on the plain language of the statute, and recognizing that the plain language interpretation was supported by legislative history); Hawkins v. Ford Motor Co., 748 So.2d 993, 1000 (Fla.1999) ("In addition to consideration of the plain language of sections 320.643(1) and 320.643(2), we find that the legislative history underlying those statutory subsections supports our conclusion regarding their relationship."); State v. Mark Marks, P.A., 698 So.2d 533, 542 (Fla.1997) ("Accordingly, we find that the legislative history, like the plain language of section 817.234(1), supports a conclusion that the statute applies to both first-party and third-party claims."); Streeter v. Sullivan, 509 So.2d 268, 271 (Fla. 1987) ("Were these provisions even slightly ambiguous, an examination of legislative history and statutory construction principles would be necessary.").

Furthermore, there may be situations where the plain meaning of a particular statute appears to conflict with legislative history. While the plain meaning of the statute would control the issue, it would be beneficial to mention the conflicting legislative history to put the Legislature on notice that, if they did not intend for the statute to operate according to its plain meaning, the Legislature should amend the statute. See, e.g., Dolly Bolding Bail Bonds v. State, 787 So.2d 73, 74 (Fla. 2d DCA 2001) ("We are concerned that the legislative history of this amendment offers some indication that the legislature did not intend the result required by the plain meaning of the statute. If the intent was not to discharge a forfeiture when the bonded defendant fails to appear because he or she has been jailed or imprisoned in another state, we suggest the legislature clarify the language in section 903.26.").
[6] The 1980 Senate's Staff Analysis and Economic Impact Statement for the legislation described the situation that gave rise to the need for a private cause of action:

A recent Dade County Grand Jury report has again focused public attention on the substandard conditions that exist in some of Florida's 331 licensed nursing homes. The report described health hazards and deficiencies in patient care that allegedly have been allowed to continue for years.
. . . .
Section 400.022, Florida Statutes, contains a list of nursing home patients' rights, copies of which must be provided to each patient or to his or her guardian at the time of, or before, the patient's admission to the facility. The law further requires nursing homes to provide staff training with regard to patients' rights to ensure compliance with the law. Florida's nursing home legislation, however, does not include a private right of action which explicitly provides a patient with the statutory authority to take legal action against any facility that deprives a patient of his rights pursuant to Chapter 400, Part I.
Fla. S. Comm. on Health & Rehabilitative Servs., CS for SB 1218 (1980) Staff Analysis at 1-2 (June 10, 1980) (emphasis added).
[7] Section 46.021, Florida Statutes (1997), also known as the "survival statute," provides: "No cause of action dies with the person. All causes of action survive and may be commenced, prosecuted, and defended in the name of the person prescribed by law."
[8] Specifically, Judge Peterson relied on transcripts from the hearings on House Bill 154 during the 1985 regular session and House Bill 79 during the 1986 session:

REP. CANADY: This bill would amend Chapter 400, which sets forth the law concerning nursing homes. And in Chapter 400 currently there is set forth sort of a nursing home residents' Bill of Rights. It's a detailed listing there of the rights that the people who live in nursing homes have under the law. The law also gives the residents of nursing homes the right to bring a legal action to enforce those rights if they're violated. So essentially, if a resident of a nursing home is mistreated in some way and that's really what it all boils down to then the resident can sue the operator of the nursing home for damages and so on to redress that wrong that has been done. There's an anomalous situation under the laws that now exist in that although a resident can do that, if the resident is treated so badly that the resident actually dies as a result of that, the cause of action does not survive so that no suit can be brought. In my home county we had this exact same situation come up. So the proposedthe proposal here would be to simply extend that cause of action to the personal representative of the estate of a deceased nursing home resident.
. . . .
REP. BILL BANKHEAD: Would you have any idea as to the limits of liability for the nursing home owners that might arise out of a suit so foul?
CHAIR: Don't get yourself going, Mr. Bankhead, he may know the answer to that.
REP. CANADY: It would be the same as theif a cause of action were brought by a living resident.
REP. DAVE THOMAS: Could I make one comment to Mr. Bankhead? ... Are you implying that we should limit the liability of nursing homes that beat people to death?
REP. BANKHEAD: [inaudible]
CHAIR: All in jest. Secretary call the roll on the bill.
Fla. H.R. Comm. on Health & Rehabilitative Serv., tape recording of proceedings (April 8, 1985) (available at Fla. Dep't of State, Bureau of Archives & Records Management, Tallahassee, Fla.) (comments of Rep. Canady) quoted in Spilman, 661 So.2d at 869.
Accordingly, House Bill 154 proposed that the statute be amended to allow suits to be brought by personal representatives, but this bill apparently died during the 1985 legislative session. The following year, the same bill was introduced during the 1986 regular session. A portion of the floor debate reflects the purpose of the proposed amendment:
HOUSE BILL NO. 79:
REP. CANADY: Members, this bill has been before the Committee before and actually has passed the House last session. It is a bill that changes Chapter 400. Under Chapter 400 currently the residents of nursing homes are given certain rights, basically the right to be treated decently and receive proper care. They are also given a legal remedy in case those rights are violated and not properly honored. However, there's an anomaly under the law in that if a nursing home resident is abused and they survive that they can bring a lawsuit. However, if they're abused so badly that they die, the cause of action is lost. So this bill would simply amend the statute to provide that the personal representative of the estate of a deceased nursing home resident would also be able to bring an action under Chapter 400 to redress the rights of a deceased nursing home resident.
Fla. H.R. Comm. on Health & Rehabilitative Serv., tape recording of proceedings (Apr. 8, 1986) (available at Fla. Dep't of State, Bureau of Archives & Records Management, Tallahassee, Fla.) (comments of Rep. Canady) quoted in Spilman, 661 So.2d at 869.
[9] As the Court notes, if the Legislature had intended for the Wrongful Death Act to control damages available in a personal representative's action against a nursing home, it could have very easily provided for the application of the provisions of the Wrongful Death Act in chapter 400.