854 So.2d 231 (2003)
STATE of Florida, Appellant,
v.
Josias PIERRE, Jr., Appellee.
No. 5D03-1184.
District Court of Appeal of Florida, Fifth District.
August 29, 2003.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellant.
Robert Wesley, Public Defender, and Jennifer MeLander Davis, Assistant Public Defender, Orlando, for Appellee.
TORPY, J.
In this driving under the influence (DUI) case, the county court has certified to us a question of statutory interpretation *232 involving the "Implied Consent Law," section 316.1932(1)(a) 1., Florida Statutes (2002). Relying upon the opinion of our sister court in State v. Bodden, 2002 WL 31421575, ___ So.2d ___ (Fla. 2d DCA 2002), the county court suppressed the results of Appellee's urine test, which revealed the presence of controlled substances in his urine. Because we disagree with Bodden's determination that the statute is ambiguous, we reverse the order suppressing the test results and remand this action for further proceedings.
Appellee was arrested for DUI. After he was informed that he must submit to testing of his breath and urine or his driving privilege would be suspended, Appellee complied. The breath test revealed a blood alcohol level below the legal limit, but the urine test showed the presence of cocaine, marijuana metabolites and other controlled substances. Determining that it was bound by Bodden, even though disagreeing with its holding, the county court granted a pretrial motion in limine that suppressed the urine test results, but it certified to us the following question as one involving great public importance:
Can the state introduce a defendant's urine test results of a urine sample obtained by law enforcement pursuant to Florida statute section 316.1932(1)(a), Florida's implied consent law, by establishing the traditional Bender and Robertson predicates, where the Florida Department of Law Enforcement has not promulgated rules governing the urine testing?
We have jurisdiction. Art. V, § 4(b)(1), Fla. Const. § 35.065, Fla. Stat. (2002), Fla. R.App. P. 9.160. We restate the question as follows:
Does section 316.1932, Florida Statutes (2002), require that urine testing procedures first be "approved" by the Florida Department of Law Enforcement before they may be administered to persons who are suspected of DUI?
We answer the question in the negative. In so doing, we certify that our decision directly conflicts with Bodden.
Our decision today turns on whether an ambiguity exists in the following portion of section 316.1932(1)(a) 1., Florida Statutes (2002), commonly referred to as the "Implied Consent Law:"
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath, and to a urine test for the purpose of detecting the presence of chemical substances as set forth in s. 877.111 or controlled substances....
(emphasis supplied). Appellee urges that this statute is unclear as to whether the urine testing procedures must be "approved" by the appropriate administrative agency, the Florida Department of Law Enforcement ("FDLE"), just as the procedures for breath and blood tests are approved. The state admits that the FDLE has not promulgated procedures for urine testing but contends that "approval" is not required by the unambiguous language of the statute. We agree.
We are urged to take either of two paths leading to the conclusion that the statute is ambiguous. The first involves the fact that "chemical test" is not defined and could arguably include urine tests. If so, the phrase "approved chemical test" would include urine tests and require that they too be approved. The language of *233 the statute, however, clearly negates this possibility because it makes a distinction between the two tests in numerous places throughout the statute, evincing that urine tests are not merely subsets of "chemical tests." For example, the statute states: "The refusal to submit to a chemical or physical breath test or to a urine test ... is admissible into evidence ...." § 316.1932(1)(a)1., Fla. Stat. (2002). (emphasis added). If urine tests were intended to fall within the definition of chemical tests, the emphasized language would be superfluous. See Pinellas County v. Woolley, 189 So.2d 217 (Fla. 2d DCA 1966) (words in statute not to be construed as superfluous if reasonable construction exists that gives effect to all words). We conclude, therefore, that no ambiguity exists by the failure to define "chemical tests."
The second possible ambiguity is illustrated by Appellee's purported quote to section 316.1932(1)(a) 1., contained within his brief, which states: "approved ... urine test[s] for the purpose of detecting the presence of chemical substances...." Appellee suggests by this quote that the adjective "approved" is intended to modify "urine test," despite the fact that the three dots represent the omission of over thirty words and three commas that separate the word "approved" from the words "urine test." To accept Appellee's strained construction we would have to ignore the statute's plain language and improperly attribute to the legislature a gross grammatical faux pas. See State v. Dugan, 685 So.2d 1210 (Fla.1996) (meaning of statute determined from plain meaning of words used). Moreover, to construe the statute in this manner would require that we ignore the remainder of the statute, which, taken in its entirety, clearly conveys a contrary intent. See St. Mary's Hospital v. Phillipe, 769 So.2d 961 (Fla.2000) (statute must be construed in its entirety and as a whole). Nowhere else within the statute is any reference made to the "approval" of urine tests. Further, the specific grant of authority given to the FDLE to implement rules for blood and breath testing is devoid of any reference to urine testing. § 316.1932(1)(a) 2., Fla. Stat. (2002). Unlike blood and breath testing, where the legislature's only mention of procedures is the grant of authority to FDLE to implement them, the procedures for urine testing are specifically set forth in the statute:
The urine test shall be administered at a detention facility or any other facility, mobile or otherwise, which is equipped to administer such tests in a reasonable manner that will ensure the accuracy of the specimen and maintain the privacy of the individual involved.
§ 316.1932(1)(a) 1., Fla. Stat. (2002).[1] Taken as a whole, therefore, the statute evinces an unambiguous intent that urine tests need not be approved. The legislature apparently concluded that its own basic guidelines were sufficient for this rather simple test, but that more comprehensive procedures should be developed for blood testing, which is more intrusive, and breath testing, which is more complex, than urine testing. We conclude, therefore, that no ambiguity exists and that principles of construction need not be utilized.[2]State v. Bradford, 787 So.2d 811 (Fla.2001).
*234 REVERSED and REMANDED, conflict CERTIFIED.
SHARP, W., and GRIFFIN, JJ., concur.
NOTES
[1] Nothing herein, of course, indicates any intent by the legislature to supersede the requirements for admission of "scientific evidence" set forth in the evidence code.
[2] Even if an ambiguity does exist, we are not convinced that section 775.021, Florida Statutes, which codifies the rule of "lenity," necessarily applies because section 316.1932 is not a statute that defines an "offense." Moreover, the rule of lenity is not applicable where the interpretation urged by a defendant is not reasonable. Nettles v. State, 850 So.2d 487 (Fla.2003).