867 So.2d 613 (2004)
STATE of Florida, Appellant,
v.
Joseph MONTELLO and Steven P. Costa, Appellees.
Nos. 4D03-112, 4D03-359.
District Court of Appeal of Florida, Fourth District.
March 10, 2004.
Charles J. Crist, Jr., Attorney General, Tallahassee, Richard Valuntas and Donna L. Eng, Assistant Attorneys General, West Palm Beach, for appellant.
Alan H. Schreiber, Public Defender, and Debra A. Bookout, Assistant Public Defender, Fort Lauderdale, for appellee Joseph Montello.
Anthony M. Livoti, Jr., Fort Lauderdale, for appellee Steven P. Costa.
GROSS, J.
In this consolidated appeal, the state challenges county and circuit court orders *614 granting motions to suppress urine test results obtained from appellees, Joseph Montello and Steven P. Costa, pursuant to Florida's implied consent statute.
Although noting their disagreement with State v. Bodden, 27 Fla. L. Weekly D2382, ___ So.2d ___, 2002 WL 31421575 (Fla. 2d DCA Oct.30, 2002), review granted, 853 So.2d 1071 (Fla. Sept.15, 2003), the trial courts granted the motions to suppress because they were bound by it.
We reverse and adopt the reasoning of State v. Pierre, 854 So.2d 231 (Fla. 5th DCA 2003). As did the court in Pierre, we rephrase the question certified by the county court:
Does section 316.1932, Florida Statutes (2002), require that urine testing procedures first be "approved" by the Florida Department of Law Enforcement before they may be administered to persons who are suspected of DUI?
Id. at 232. Consistent with Pierre, we answer the question in the negative and certify conflict with Bodden.
To Pierre's reasoning, we add the following observations that support the conclusion that urine tests need not be "approved" by the Florida Department of Law Enforcement (FDLE) to be admissible under the implied consent statute.
The plain meaning of statutory language is the first consideration of statutory construction. See Fla. Convalescent Ctrs. v. Somberg, 840 So.2d 998, 1000 (Fla.2003). "[W]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Id. (citation omitted). The statute at issue in this case, Bodden, and Pierre, is section 316.1932(1)(a)1., Florida Statutes (2002) which stated[1]:
Any person who accepts the privilege extended by the laws of this state of operating a motor vehicle within this state is, by so operating such vehicle, deemed to have given his or her consent to submit to an approved chemical test or physical test including, but not limited to, an infrared light test of his or her breath for the purpose of determining the alcoholic content of his or her blood or breath, and to a urine test for the purpose of detecting the presence of chemical substances as set forth in s. 877.111 or controlled substances....
(Emphasis added).
Pierre points out that Chapter 316 "makes a distinction between the two tests [urine and "approved chemical test"] in numerous places throughout the statute, evincing that urine tests are not merely subsets of `chemical tests.'" 854 So.2d at 232-33. Section 316.1932(1)(a)1. distinguishes between urine and breath tests. One sentence began: "The chemical or physical breath test must be incidental to a lawful arrest ...." § 316.1932(1)(a)1., Fla. Stat. (2002). A few lines later, the statute read: "The urine test shall be administered at a detention facility...." Id. The separation of "urine test" from "chemical or physical breath test" in these two sentences indicates a legislative intent to treat the two items separately.
The distinction between breath and urine tests is further demonstrated by the structure of the last sentence in section 316.1932(1)(a)1.:
The refusal to submit to a chemical or physical breath test or to a urine test *615 upon the request of a law enforcement officer as provided in this section is admissible into evidence in any criminal proceeding.
(Emphasis added). This language indicates a separation of urine tests from chemical or physical breath tests; otherwise the statute would have no reason to include the emphasized words.
It is well-settled that all parts of a statute must be read together, such that the statute is consistent in its entirety. See T.R. v. State, 677 So.2d 270, 271 (Fla. 1996). "A statutory phrase should ... be viewed not only in its internal context within the section, but in harmony with interlocking statutes." WFTV, Inc. v. Wilken, 675 So.2d 674, 679 (Fla. 4th DCA 1996).
Bodden indicated that it was following this principle of statutory construction "in reading section 316.1932(1)(a)(1) in conjunction with sections 316.1932(1)(b)(2) and 316.1932(1)(f)(1)" to "conclude that an `approved' urine test is one in which the method of administration and the analysis of the test are `performed substantially according to methods approved by' the FDLE." 27 Fla. L. Weekly at D2382-83, ___ So.2d at ___. Bodden did not explain how a reading of those statutes led to its decision. Our examination of Chapter 316 leads us to draw the opposite conclusion.
Section 316.1932(1)(f)1. explicitly gave FDLE the authority to create rules for breath and blood testing. No statute directs FDLE to establish rules for urine testing for non-commercial drivers. Moreover, other sections in Chapter 316 clearly link FDLE's authority to promulgate regulations with breath and blood testing, but not urine tests. See § 316.1932(1)(a)2., Fla. Stat. (2002) ("The Alcohol Testing Program within the Department of Law Enforcement is responsible for the regulation of the operation, inspection, and registration of breath test instruments utilized under the driving and boating under the influence provisions and related provisions located in this chapter ....") (emphasis added); § 316.1932(1)(b)2., Fla. Stat. (2002) ("An analysis of a person's breath, in order to be considered valid under this section, must have been performed substantially according to methods approved by the Department of Law Enforcement.") (emphasis added); § 316.1933(2)(b), Fla. Stat. (2002) ("A chemical analysis of the person's blood to determine the alcoholic content thereof must have been performed substantially in accordance with methods approved by the Department of Law Enforcement....") (emphasis added); § 316.1934(3), Fla. Stat. (2002) ("A chemical analysis of a person's blood to determine alcoholic content or a chemical or physical test of a person's breath, in order to be considered valid under this section [addressing the presumption of impairment for the "amount of alcohol in the person's blood or breath at the time alleged, as shown by chemical analysis of the person's blood, or by chemical or physical test of the person's breath"][2] must have been performed substantially in accordance with methods approved by the Department of Law Enforcement ....") (emphasis added).
In requiring urine tests that comply with rules promulgated by FDLE, Bodden creates a statutory paradox. Nowhere in Chapter 316 has the legislature given FDLE the authority to promulgate rules for urine testing for non-commercial drivers. FDLE has no inherent rulemaking authority: "A grant of rulemaking authority is necessary but not sufficient to allow an agency to adopt a rule; a specific law to be implemented is also required. An agency may adopt only rules that implement or interpret the specific powers and *616 duties granted by the enabling statute." § 120.536(1), Fla. Stat. (2002). To implement Bodden's requirement that urine testing be "approved" by FDLE, further legislation would be required to give FDLE the authority to promulgate rules. The statute should not be read in a way that renders it inoperative without further legislation.
Finally, in 2003, the legislature amended section 316.1932(1)(a) in a way that unambiguously reflects the legislative intent to exempt urine testing from any FDLE approval requirement. Ch.2003-54, § 1, at 415-16, Laws of Fla. Staff analysis from the house versions of the bill indicates that the impetus for the new legislation was a disagreement with Bodden. Fla. H.R. Comm. on Tests for Alcohol, Chemical Substances, or Controlled Substances, HB 947 (2003) Staff Analysis 2 (final Apr. 2, 2003).
It is proper to consider the 2003 legislation in arriving at the correct interpretation of 316.1932(1)(a)1. See Barns v. State, 768 So.2d 529, 532-33 (Fla. 4th DCA 2000). As the supreme court has noted:
The rule seems to be well established [that] the interpretation of a statute by the legislative department goes far to remove doubt as to the meaning of the law. The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.
Gay v. Canada Dry Bottling Co. of Fla., 59 So.2d 788, 790 (Fla.1952) (quoting Gen. Petroleum Corp. of Cal. v. Smith, 62 Ariz. 239, 157 P.2d 356, 360 (1945)). The 2003 legislation supports Pierre.
REVERSED AND REMANDED.
STONE and HAZOURI, JJ., concur.
NOTES
[1] The statute, as noted below, has been substantially amended in response to Bodden, in this past legislative session.
[2] See § 316.1934(2).