Denise GARDNER, Plaintiff,

v.

WAYNE COUNTY, Kulah Allen, Princella Buchannon, Josephine Messelmani–Woods, Felecia Coleman and Loretta Wade, Defendants.

No. 06–CV–10372–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Aug. 21, 2007.

Barry A. Seifman, Raymond Guzall, III, Seifman and Guzall, Farmington Hills, MI, for Plaintiff.

Linda G. Burwell, Thomas Schramm, Nemeth Burwell, Cheryl A. Yapo, Detroit, MI, for Defendants.

## OPINION AND ORDER GRANTING "DEFENDANTS' MOTION FOR SUMMARY JUDGMENT" AND DENYING AS MOOT "DEFENDANTS' MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S CLAIMS FOR ECONOMIC DAMAGES"

ROBERT H. CLELAND, District Judge.

Pending before the court is Defendants Wayne County (the "County"), Kulah Allen, Princelia Buchannon, Josephine Messelmani–Woods, Felecia Coleman and Loretta Wade's ("Defendants' ") May 10, 2007 "Motion for Summary Judgment." This motion has been fully briefed and the court concludes that a hearing on the motion is not necessary. See E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the court will grant Defendants' motion.

### I. BACKGROUND

Unless otherwise noted, these facts are uncontested. Plaintiff Denise Gardner, a white female, was employed by the County as a Division III jail health services x-ray technician from February 28, 2000 to November 29, 2004. She was stationed on the third floor and, at the time of her hire, she was one of two x-ray technicians. The other x-ray technician was Gary Kazmiercak, a white male, who was assigned to Division I. Because they were the only two x-ray technicians, Gardner and Kazmiercak were required to cover for each other during any absences. All of the individual

Defendants are African–American and the County jail employees and management team were predominantly African–American.

Kazmiercak provided Gardner with some training when she began work and claimed that she was uncooperative and had a negative attitude. Sometime during Gardner's probationary period, Kazmiercak reported Gardner's unprofessional behavior to Judith Johnson, the Assistant Director, and Marcie Gater, Nursing Administration, and recommended termination. The County determined that Plaintiff should be given a chance. Prior to her termination, during her approximately five years working for the County, she was formally disciplined three times. Only one of these disciplinary actions fall within the relevant statute of limitations: on May 3, 2004 she was suspended for insubordination and offensive behavior for sitting in the records department, which was not her usual worksite, speaking loudly and at length on a personal telephone call. If done without permission, personal calls were against the County's policy.

Gardner submits that this disciplinary action was improperly racially motivated. During Gardner's employment at the County, she submitted written complaints regarding harassment and discrimination. Peppers is the County's Director of Health Services. Peppers stated that she investigated Plaintiff's complaints by speaking to a number of individuals. Those individuals do not recall having such conversations with Peppers. Peppers explains that these conversations were general in nature, meant to diffuse the situation, and that she would not be surprised if nobody recalled the conversations years later.

The events that gave rise to Gardner's termination occurred on May 20, 2004. According to Coleman, Gardner's supervisor, Coleman was just outside her office when Gardner came down the hallway visibly upset and intentionally plowed into Coleman, almost knocking her off her feet. Gardner did not apologize and instead kept on walking. Gardner disputes this claim and says that she never made physical contact with Coleman. Gardner did not even recall passing Coleman in the hallway on May 20, 2004. The only other person who claims to have witnessed this encounter was Tony Smith, a white police officer. Although the details of his account differ from that of Coleman, Smith opined, though not positively, that it did not appear the contact was an accident because it was aggressive and because Gardner gave Coleman an unapologetic look following the incident.

Coleman then called Woods, the Director of Nursing, to come to the area and discussed this incident with her. Coleman also told Woods that Gardner ran into Stephanie Kemp a week prior and stated her opinion that Gardner was a threat to the safety of the staff. Gardner denies ever bumping into Kemp. After Gardner returned from her lunch break, Woods spoke to her and Gardner was escorted from the premises. Woods recommended Gardner's termination and scheduled a disciplinary hearing that week. Before the hearing could take place, Gardner went on FMLA leave. The County finalized its investigation and terminated Gardner upon her November 29, 2004 return. Gardner grieved the termination, but never arbitrated it because she claims she was told it could not go to arbitration. The County did not replace Gardner. Kazmiercak remains the sole x-ray technician and has taken over Gardner's duties.

Gardner filed her complaint on January 27, 2006, claiming intentional infliction of emotional distress and race discrimination, harassment and retaliation under Title VII of the Civil Rights Act of 1964 ("Title

VII"), Michigan's Elliott–Larsen Civil Rights Act, Mich. Comp. Laws § 37.2102 *et seq.* ("ELCRA") and 42 U.S.C. §§ 1981 and 1983 against the County and the individual Defendants in their official and personal capacities.

## II. STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir.2003). "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate." *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir.1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial. *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The moving party must first show the absence of a genuine issue of material fact. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir.2000) (citing *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548). The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). They must put forth enough evidence to show that there exists a genuine issue to be decided at trial. *Plant*, 212 F.3d at 934 (citing *Anderson*, All U.S. at 256, 106 S.Ct. 2505). Summary judgment is not appropriate when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, All U.S. at 251–52, 106 S.Ct. 2505 (1986).

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment— the disputed factual issue must be material. See *id.* at 252, 106 S.Ct. 2505 (emphasis and alteration in original) (citation omitted) ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted).

## III. DISCUSSION

### A. Discrimination

■ The court's analysis in determining the merit of Plaintiffs race discrimination claims under ELCRA, § 1981, § 1983 and Title VII are the same. "The elements of a cause of action of reverse race discrimination under Elliot–Larsen and Title VII are also the elements required to establish a reverse race discrimination claim under Section 1983." *Nelson v. City of Flint*, 136 F.Supp.2d 703, 713 (E.D.Mich.2001) (citing *Gutzwiller v. Fenik*, 860 F.2d 1317, 1325 (6th Cir.1988)); *see also Weberg v. Franks*,

229 F.3d 514, 522 (6th Cir.2000) ("Because both Title VII and § 1983 prohibit discriminatory employment practices by public employers, this court looks to Title VII disparate treatment cases for assistance in analyzing race discrimination in the public employment context under § 1983."). Furthermore, Plaintiff's 42 U.S.C. § 1981 race discrimination claim is also properly analyzed using the same analysis utilized for discrimination claims brought under Title VII. *See Newman v. Fed. Express Corp.*, 266 F.3d 401, 406 (6th Cir.2001) (citing *Patterson v. McLean Credit Union*, 491 U.S. 164, 186, 109 S.Ct. 2363, 105 L.Ed.2d 132(1989)).

### 1. Direct Evidence

■ Plaintiff bears the burden to establish a *prima facie* case of race discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff "can make the required showing by demonstrating that race was a direct factor in the employment decision." *Weberg*, 229 F.3d at 522 (citations omitted). Direct evidence is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir.2003) (quoting *Jacklyn v. Schering–Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir.1999)). "Direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir.2000)).

■ Direct evidence usually requires an "unmistakable verbal assertion that the plaintiff was treated adversely because of his race." *Paasewe v. Ohio Arts Council*,

No. 02–3843, 2003 WL 22017539 at *2 (6th Cir. Aug.25, 2003) (citing *Smith v. Chrysler Corp.*, 155 F.3d 799, 805 (6th Cir.1998)). Furthermore, even when the plaintiff introduces some evidence of discriminatory animus, the plaintiff bears the burden of demonstrating that the employee suffered an adverse employment consequence that was in some part related to the employer's illegal discriminatory animus. *See Graham v. Ford*, 604 N.W.2d 713, 717 (Mich. App.1999) (applying Sixth Circuit's definition of direct evidence).

■ Plaintiff argues that she has presented direct evidence demonstrating that she was terminated because of her race. Plaintiff bases her direct evidence claim on (1) Buchannon's practice of referring to Plaintiff as the "crazy white lady" and (2) Dynverney and King's opinions that Plaintiff was discriminated against and wrongfully terminated based on her race. Buchannon's habit of calling Plaintiff a crazy white lady, while not laudable, does not constitute direct evidence of race discrimination because Bunchannon was not the decision-maker responsible for Plaintiff's termination. Plaintiff was terminated based on Coleman's complaint to Woods, who recommended termination. Plaintiff's termination was ultimately approved by Peppers. Plaintiff does not even claim that Bunchannon was a decision-maker, and the court concludes as a matter of law that Bunchannon's references are insufficient to "require[ ] the conclusion" that racial animus was a motivating factor in Plaintiff's termination. *See Johnson*, 319 F.3d at 865.

■ Dynverney and King's affidavits claiming that Plaintiff was discriminated against on the basis of race, even if admissible, are insufficient to constitute direct evidence of discrimination. Plaintiff has cited no case law supporting the proposition that a co-worker's opinion that

Plaintiff was terminated based on her race constitutes direct evidence of race discrimination. Moreover, Plaintiff herself concedes that she does not know if Coleman's accusation that Plaintiff of bumped into her was racially motivated, and she also does not know if the decisionmakers who suspended her for speaking on the phone were motivated by racial animus. She merely states her belief that because she was the only white person working in her division and floor, negative comments and actions directed at her were done so because of her race. This is insufficient to support a finding of direct evidence on her discrimination claims. The court must now consider whether Plaintiff can establish a material issue of fact with indirect evidence.

### 2. Indirect Evidence

#### a. *Prima Facie Case*

■ To present a *prima facie* case of race discrimination using indirect evidence under the *McDonnell Douglas* framework, Plaintiff must show that (1) she is a member of a protected class, (2) she was subject to an adverse employment action, (3) she was qualified for her position and (4) she was replaced[1] by a person outside the protected class or that a comparable non-white person was treated differently. *See Vaughn v. Watkins Motor Lines, Inc.*, 291 F.3d 900, 906 (6th Cir.2002); *Mitchell v.*

*Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992).

■ Because Plaintiff is bringing a so-called "reverse discrimination" case,[2] Plaintiff must also show "background circumstances support[ing] the suspicion that the defendant is that unusual employer who discriminates against the majority" to satisfy the first prong of the test. *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir.2002) (quoting *Murray v. Thistledown Racing Club, Inc.*, 770 F.2d 63, 67 (6th Cir.1985) (quoting *Parker v. Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1017 (D.C.Cir.1981))). "To satisfy the fourth prong, a plaintiff must show that the defendant treated differently employees who were similarly situated but were not members of the protected class." *Wilson v. Ohio Dep't of Job & Family Servs.*, 178 Fed.Appx. 457, 465 (6th Cir.2006) (citing *Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir.2003)). "Michigan courts have adopted this form of the prima facie case for reverse discrimination claims brought under the Elliott–Larsen Civil Rights Act." *Sutherland*, 344 F.3d at 614 (citing *Allen v. Comprehensive Health Servs.*, 222 Mich.App. 426, 564 N.W.2d 914 (Mich.Ct.App.1997)).

■ "Background circumstances" include showing, as Plaintiff has done here, that she was "a Caucasian employee in a

---

1. The County did not hire another employee to fill Plaintiff's position after she left; instead, Kazcmiercak took over Plaintiff's responsibilities. Therefore, to the extent that Plaintiff was replaced, she was replaced by someone of her own race.

2. Courts have criticized this "reverse discrimination" jurisprudence because it imposes "a more onerous standard for plaintiffs who are white or male than for their non-white or female counterparts." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 801 (6th Cir.1994). "While this [c]ourt may share the

Pierce court's concerns, the fact remains that the additional 'background circumstances' element remains the law of this Circuit and this court, accordingly, is not at liberty to disregard it." *Comiskey v. Automotive Industry Action Group*, 40 F.Supp.2d 877, 893 n, 20 (E.D.Mich.1999) (Rosen, J.); *see also Weberg*, 229 F.3d 514 (reversing the district court's grant of summary judgment for defendant employer because the district court applied the traditional Title VII test instead of the modified test in a reverse discrimination case).

workplace predominantly staffed and managed by African–Americans." *Weberg, 229 F.3d at 523. Accordingly, Plaintiff has satisfied the first prong of her prima facie case.* Because Defendants do not claim that Plaintiff was unqualified for her job or that her suspension or termination did not constitute an adverse employment action, the dispute in this case centers on the fourth prong of the prima facie case: whether Wayne County employees similarly situated in all relevant respects to Plaintiff, except for her race, were treated more favorably, and whether Plaintiff can point to additional evidence to indicate that this difference in treatment was due to race.

 Plaintiff cannot satisfy the fourth prong because she has not shown that she was treated differently than similarly situated individuals outside of her protected class. In order for two employees to be considered similarly situated, "the plaintiff must prove that all of the relevant aspects of [her] employment situation are 'nearly identical' to those of the . . . employees who [she] alleges were treated more favorably." *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d 796, 802 (6th Cir.1994). The Sixth Circuit has determined that

> [T]o be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subjected to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*McMillan v. Castro,* 405 F.3d 405, 413 (6th Cir.2005) (citing *Mitchell,* 964 F.2d at 583). To demonstrate that certain employees were similarly-situated with Plaintiff, Plaintiff is "required to prove that all of the relevant aspects of [her] employment

situation were 'nearly identical' to those of the [non-white comparables'] employment situation," Pierce, 40 F.3d at 802, and that the similarly-situated employees were "engaged in misconduct of comparable seriousness," *Harrison v. Metropolitan Government of Nashville & Davidson County,* 80 F.3d 1107, 1115 (6th Cir.1996). Thus, if Plaintiff can show that similarly-situated non-white employees were treated more favorably than she was, she will have succeeded in establishing a *prima facie* case of discrimination.

Plaintiff points to nine individuals whom she claims are similarly situated to her but were treated more favorably because they were non-white. Plaintiff argues that they are similarly-situated because Peppers handled their suspensions and terminations. Even assuming that, because Peppers indirectly supervised these individuals, they qualify as being subject to the same supervisor and standards as Plaintiff, (which the court only assumes for the sake of argument), Plaintiff has failed to show that any of them engaged in the same or similar conduct. Unlike Plaintiff, Geraldine Harris, Shirley Buckner–King and Sabrina Rhodes had attendance issues, Dorthy Edwards, Theresa Williams and Margaret Tatum refused emergency work, Roberta Jones–Quarterly failed to process a patient's eye surgery, Keith Moyer was caught drinking on the job, Susan Spencer had unsatisfactory job performance and Joyce Scarbough falsified records.

While these employees engaged in a wide variety of misconduct, both in type and degree, and received discipline ranging from oral reprimand to termination, all of them are materially different from Plaintiff's admitted act of violating her employer's phone policy and Plaintiff's alleged act of intentionally and unapologetically bumping into her superior. Indeed, Plaintiff does not attempt to compare the

various misdeeds to her own alleged misdeeds and instead compares only the discipline they received to her own. Although one could question the County's responses to some of their employees' misbehavior, this does nothing to satisfy Plaintiff's burden of showing that other employees' acts were of comparable seriousness to her own and punished less severely.

After reviewing the facts in a light most favorable to Plaintiff, the court concludes as a matter of law that Plaintiff has failed to present similarly situated employees who were treated more favorably because of their race.

### b. Pretext

▬ Even if Plaintiff had established a *prima facie* case of race discrimination, summary judgment would still be appropriate because Defendants have proffered legitimate, nondiscriminatory reasons for Plaintiffs suspension and termination and Plaintiff has not pointed to any convincing evidence that those reasons were a mere pretext for discrimination. Defendants claim that Plaintiff was suspended for violating the County's phone policy and that its decision to terminate Plaintiff was based on Plaintiff's physically hostile attitude toward her superiors.

▬ In order to defeat a motion for summary judgment once Defendants articulate their legitimate nondiscriminatory reasons, it is incumbent on Plaintiff to show that the proffered reasons were pretextual. *See Godfredson v. Hess & Clark,* 173 F.3d 365, 373 (6th Cir.1999). Plaintiff may make such a showing "by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Smith,* 155 F.3d at 805–06.

Regarding her suspension, Plaintiff admits that she was caught loudly taking a lengthy telephone call outside her work area in violation of the County's policy, that she did not immediately cease the call, and that she did not know of another employee who engaged in similar behavior but was not suspended. While Plaintiff does contend that she was "set-up" by Buckhannon, this alleged set-up consisted only of Buckhannon reporting Plaintiff's behavior. Accordingly, Plaintiff has failed to rebut Defendants' legitimate, non-discriminatory reasons for suspending her.

Regarding her termination, Plaintiff contests Defendants' allegation that she ran into Coleman. Plaintiff was terminated, however, after Coleman reported this alleged encounter that a police officer also claims to have witnessed. Although their two accounts are not identical, they constitute a "basis in fact," and the County could have properly relied on these reports, even mistakenly, in its decision to terminate Plaintiff:

> [The Sixth Circuit] has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect.

See *Majewski v. Automatic Data Processing, Inc.,* 274 F.3d 1106, 1117 (6th Cir. 2001) (citing *Smith,* 155 F.3d at 806–07). Furthermore, Coleman relayed to Woods not only her personal encounter with Plaintiff, but also a previous incident where Plaintiff ran into Kemp. Although Plaintiff denies both of these incidents, because Plaintiff has not offered evidence that these alleged encounters did not actually motivate Defendants' decision, or was never used in the past to discharge an employee, Plaintiff has failed to rebut De-

fendants' legitimate, non-discriminatory reasons for terminating her.

### B. Harassment

 Plaintiff bears the burden of establishing a *prima facie* case of harassment and must show that (1) she belonged to a protected class, (2) she was subject to unwelcome harassment, (3) the harassment was based on her protected classification, (4) the harassment had the effect of unreasonably interfering with her work and (5) respondeat superior liability. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir.1999). Courts consider all the relevant circumstances, including the following, in determining whether a reasonable person would find the environment hostile:

> The frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.*

 Defendants claim that only five of Plaintiff's allegations of harassment are timely: (1) after Woods received Coleman's report that Plaintiff plowed into Coleman, Woods made Plaintiff end her phone call, turn in her keys and escorted her from the building; (2) Buckhannon reported Plaintiff's phone call use to Coleman which resulted in her suspension; (3) Buckhannon frequently commented on Plaintiff's failure to wear a lab coat; (4) Plaintiff speculated that it was Buckhannon who sent inmates back to their cells after Plaintiff called them up for x-rays; and (5) Kemp told Plaintiff that white people do not wear fur coats. Defendants argue that these are non-serious isolated incidents that did not alter the conditions of Plaintiff's employment. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 786, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).

Plaintiff's only response is as follows:

> Plaintiff has cited to numerous discriminatory acts and harassment that date back to Defendant Wade's supervision of Plaintiff. (See Defendants Exhibit D, Plaintiff's Exhibits 1, 2 and 16). Plaintiff has met each prong of the tests set forth in Defendants['] brief as to the above cited causes, and has presented those proofs herein.

(Pl.'s Resp. at 22.) This cursory and conclusory response is insufficient to meet Plaintiffs burden to point to admissible evidence showing a genuine issue of material fact regarding Plaintiffs alleged harassment.

### c. Retaliation

 To make out a *prima facie* case of retaliatory discrimination, Plaintiff must establish that: (1) she engaged in protected activity; (2) Defendants knew of her protected activity; (3) thereafter Defendants took an adverse employment action against her; and (4) there was a casual connection between the protected activity and the adverse action. *Nguyen*, 229 F.3d at 563.

 Plaintiff did not allege retaliation in her EEOC grievance, and her failure to exhaust her administrative remedies bars her Title VII claim of retaliation. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir.1991). Even if Plaintiff had exhausted her administrative remedies, her retaliation claim would still fail as a matter of law because Plaintiff stated in her deposition that Defendants never retaliated against her for making complaints. Plaintiffs more recent, vague affidavit to the contrary is insufficient, in itself, to create a genuine issue of material fact as to her retaliation claim.

■ Furthermore, Plaintiff presents no evidence that the allegedly harassing events she described were causally connected to her EEOC complaints. To establish a casual connection under the fourth element, Plaintiff must "produce sufficient evidence from which an inference could be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination [charge]." *Nguyen*, 229 F.3d at 563 (citing *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997) and *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir.1984)). Temporal proximity alone is rarely enough to satisfy the fourth element. *See id.* at 566; *Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir.1986). Without evidence of a causal connection, summary judgment is appropriate on Plaintiff's claims of retaliation.

### D. Individual Defendant Liability

Plaintiff contends that the individual Defendants can be held liable for their discriminatory acts and Defendants contest this assertion. "This circuit holds that an individual employee/supervisor who does not otherwise qualify as an 'employer' may not be sued under Title VII. Individual liability is allowed under 1983, however." *Weberg*, 229 F.3d at 522 (citing *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir.1997)). Similarly, Michigan courts have held that "if a person has responsibility for making personnel decisions for the company, he is an agent within the statutory definition of an employer" and, therefore, could be held individually liable under ELCRA. *Jenkins v. Se. Mich. Chapter, Am. Red Cross*, 141 Mich.App. 785, 369 N.W.2d 223, 230 (1985).

However, because Plaintiff has failed to show that there is a genuine issue of material fact as to her race discrimination, harassment or retaliation claims, whether the individual Defendants could be held individually liable is moot.

### E. Intentional Infliction of Emotional Distress Claim

■ "The tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Haverbush v. Powelson*, 217 Mich.App. 228, 233–34, 551 N.W.2d 206 (1996) (citing *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 374 N.W.2d 905 (1985); *Johnson v. Wayne County*, 213 Mich.App. 143, 540 N.W.2d 66 (1995)). To make out Plaintiff's claim for intentional infliction of emotional distress, Plaintiff relies on her allegations of discrimination, harassment and retaliation to establish extreme and outrageous conduct. She claims that her complaints gave Defendants notice of their allegedly discriminatory acts, and that their continued discrimination was therefore intentional. Finally, Plaintiff represents that she sought medical treatment as a result of Defendants' intentionally discriminatory acts. Because the court has found that Plaintiff has failed to show that there is a genuine issue of material fact as to her race discrimination, harassment or retaliation claims, Plaintiff cannot show a genuine issue of material fact as to whether Defendants' acts were extreme and outrageous.

### IV. CONCLUSION

For the reasons articulated above, IT IS ORDERED that "Defendants' Motion for Summary Judgment" [Dkt. # 43] is GRANTED.

IT IS FURTHER ORDERED that "Defendants' Motion in Limine to Exclude Plaintiff's Claims for Economic Damages" [Dkt. # 135] is DENIED AS MOOT.