995 So.2d 1118 (2008)
Amy CARSILLO, Appellant,
v.
CITY OF LAKE WORTH, Appellee.
No. 4D07-4236.
District Court of Appeal of Florida, Fourth District.
December 3, 2008.
Isidro M. Garcia of the Garcia Law Firm, P.A., West Palm Beach, for appellant.
Susan Potter Norton and Jessica T. Travers of Allen, Norton & Blue, P.A., Coral Gables, for appellee.
Travis R. Hollifield, Winter Park, for Amicus Curiae National Employment Lawyers Association Florida Charter.
KLEIN, J.
We withdraw our opinion filed on September 10, 2008 and replace it with this opinion.
*1119 Carsillo, a firefighter/paramedic, sued her employer, the City of Lake Worth, under the Florida Civil Rights Act, alleging a claim for pregnancy discrimination and retaliation. The trial court granted the city's motion for summary judgment, holding that the Florida statute, although prohibiting sex discrimination, does not prohibit discrimination based on pregnancy. We conclude that, because the Florida statute is patterned after the Federal Civil Rights Act, which considers pregnancy discrimination to be sex discrimination, the Florida Act bars such discrimination.
The facts, in brief, are that Carsillo, who had requested light duty in the fire department as a result of her pregnancy, was offered a light duty assignment which was not within the fire department. Carsillo initially objected and took some vacation days rather than accept the assignment, but ultimately returned to light duty assignments in other departments. This lawsuit, which Carsillo filed under the Florida Civil Rights Act, section 760.01-10, Florida Statutes (2004) (FCRA), alleged discrimination in that other employees with physical restrictions had been accommodated with light duty in the fire department.
The Florida Civil Rights Act of 1992 (FCRA) provides in section 760.10:
It is an unlawful employment practice for an employer: (a) to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.
This provision is identical to the Civil Rights Act of 1964, as amended (Title VII), 42 U.S.C. § 2000e-2, which states:
It shall be an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.
It is well-established that if a Florida statute is patterned after a federal law, the Florida statute will be given the same construction as the federal courts give the federal act. State v. Jackson, 650 So.2d 24 (Fla.1995). This is easier said than done, because of a decision of the United States Supreme Court, holding that an employer's disability insurance plan, which did not cover disabilities arising from pregnancy, did not violate Title VII. General Elec. Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). Gilbert was a controversial five-to-four decision to which Congress responded by enacting the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k), (PDA) which specified that discrimination because of pregnancy is sex discrimination and violative of Title VII. Most significantly, when it enacted this amendment, Congress expressed its disapproval of both the holding and the reasoning of Gilbert. Newport News Shipbuilding & Dry Dock Co. v. EEOC, 462 U.S. 669, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) (recognizing that the holding of the majority in Gilbert was contrary to the intent of Congress when Title VII was enacted in 1964 and overruling Gilbert). See also Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312 (11th Cir.1994) ("Rather than introducing new substantive provisions protecting the rights of pregnant women, the PDA brought discrimination on the basis of pregnancy within the existing statutory framework prohibiting sex-based discrimination.").
*1120 The Florida statute, unlike the federal statute, has never been amended to specifically state that pregnancy discrimination is sex discrimination. It is the lack of such an amendment in Florida which underlies the controversy as to whether Florida prohibits pregnancy discrimination.
O'Loughlin v. Pinchback, 579 So.2d 788 (Fla. 1st DCA 1991), affirmed an award of back pay for a pregnancy discrimination claim under the Florida Act; however, O'Loughlin has been interpreted differently by federal district courts in which pregnancy discrimination claims have been asserted under the Florida Act. Boone v. Total Renal Labs., Inc., 565 F.Supp.2d 1323 (M.D.Fla.2008), cites many of those cases.
It is the preemption discussion in O'Loughlin which has resulted in the conflict. After noting that the original acts were identical, and that Congress amended the federal law after Gilbert, but Florida has not amended its act, the court stated:
Under a Guerra pre-emption analysis [California Federal Savings and Loan Association v. Guerra, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987)], Florida's law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress by not recognizing that discrimination against pregnant employees is sex-based discrimination. The protections afforded by Title VII and the PDA cannot be eroded by the Florida Act which does not contain a similar provision. Thus, we conclude that the Florida Human Rights Act, specifically Section 760.10, Florida Statutes, is pre-empted by Title VII of the Civil Rights Act of 1984, 42 U.S.C. § 2000e-2 to the extent that Florida's law offers less protection to its citizens than does the corresponding federal law.

O'Loughlin, 579 So.2d at 792 (emphasis added).
Although O'Loughlin involved a claim for pregnancy discrimination under the Florida Act, some federal district courts have interpreted O'Loughlin as not allowing relief under the Florida Act for discrimination based on pregnancy, because the Florida Act was not amended. See, e.g., Boone. This demonstrates, according to the city, that the Florida legislature did not intend to protect pregnancy discrimination as sex discrimination. We do not agree. We conclude that the fact that Congress made clear in 1978 that its intent in the original enactment of Title VII in 1964 was to prohibit discrimination based on pregnancy as sex discrimination, it was unnecessary for Florida to amend its law to prohibit pregnancy discrimination.
Our reasoning is based on the principle of Gay v. Canada Dry Bottling Co. of Florida, 59 So.2d 788 (Fla.1952), in which our Supreme Court had to decide if a transaction was taxable as a retail sale under a 1949 statute. By the time the case had come to the court, the legislature had in 1951 clarified that the legislative intent was to tax such a transaction. The court adopted the principle from other jurisdictions that "the court had the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation." Id. at 790. See also State v. Lanier, 464 So.2d 1192 (Fla. 1985).
The Florida statute was originally enacted as the Florida Human Relations Act in 1969 and it prohibited discrimination based on "race, color, religion, or national origin." Ch. 69-287, Laws of Fla. (July 1, 1969). An amendment added a prohibition against "sex" discrimination in 1972. Ch. 73-48, Laws of Fla. Other classifications were added in 1977, when the legislature renamed it the Human Rights Act of 1977. It was renamed the Florida Civil Rights *1121 Act in 1992. As we noted earlier, the Florida statute has been patterned after the federal statute, and under Jackson, 650 So.2d 24, this means that the Florida statute will be given the same construction as the federal statute.
As we noted earlier, when Congress passed the PDA in 1978, it explained that it had intended to prohibit discrimination based on pregnancy when it enacted Title VII in 1964. Because it was the intent of Congress in 1964 to prohibit this discrimination, and under Jackson we construe Florida statutes patterned after federal statutes in the same manner that the federal statutes are construed, it follows that the sex discrimination prohibited in Florida since 1972 included discrimination based on pregnancy. This conclusion is also consistent with the expressed intent of our legislature that our statute is to be liberally construed for victims of employment discrimination. § 760.01(3), Fla. Stat.; Maggio v. Fla. Dep't of Labor & Employment Sec., 899 So.2d 1074 (Fla. 2005); Woodham v. Blue Cross & Blue Shield of Fla., Inc., 829 So.2d 891 (Fla. 2002).
Courts in other jurisdictions, in which the state civil rights statute prohibited sex discrimination, but not specifically pregnancy discrimination, have also interpreted sex discrimination to include pregnancy discrimination. Lapeyronnie v. Dimitri Eye Ctr., Inc., 693 So.2d 236 (La.App. 4 Cir.1997); Brennan v. Nat'l Tel. Dir. Corp., 850 F.Supp. 331 (E.D.Pa.1994); Gorman v. Wells Mfg. Corp., 209 F.Supp.2d 970 (S.D.Iowa 2002).
The summary judgment is reversed.
TAYLOR and DAMOORGIAN, JJ., concur.