Sheyla **BERRIOS,** Plaintiff,

v.

**UNIVERSITY OF MIAMI,** Defendant.

**Case No. 11–CIV–22586–UU.**

United States District Court,
S.D. Florida.

March 1, 2012.

Joseph Stanley Shook, Coral Gables, FL, for Plaintiff.

Robert T. Kofman, Bayardo E. Aleman, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Miami, FL, Tobi Beth Lebowitz, Stearns Weaver Miller Weissler Alhadeff & Sitterson, Fort Lauderdale, FL, for Defendant.

## ORDER ON MOTION FOR PARTIAL SUMMARY JUDGMENT

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant's motion for partial summary judgment on Count II of Plaintiff's Complaint. (D.E. 15).

THE COURT has considered Defendant's motion, the pertinent portions of the record, and is otherwise fully advised on the premises.

### I. Factual and Procedural Background

Plaintiff, a female former employee of Defendant, brings the present suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(k) *et seq.* ("Title VII") and the Florida Civil Rights Act of 1992, Fla. Stat. 760.01 *et seq.* ("FCRA"). In Count 1 of her complaint, Plaintiff claims discrimination under Title VII on the basis of Defendant's termination of her due allegedly to her pregnancy. (D.E. 1). In Count 2 of her complaint, Plaintiff claims discrimination based upon the same alleged facts under the FCRA. Defendant now moves for an entry of summary judgment as to Count 2 on the grounds that Plaintiff cannot maintain a cause of action for pregnancy discrimination under the FCRA. (D.E. 15). Plaintiff responds that case law from Florida's Fourth District Court of Appeal recognizes a cause of action for pregnancy discrimination under the FCRA. (D.E. 27).

After carefully considering both parties' motions, as well as the applicable case law and legislative history, the Court agrees with Defendant for the reasons herein stated.

### II. Summary Judgment Standard

Summary judgment is authorized only when the moving party meets its burden of demonstrating that "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The Supreme Court explained in *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), that when assessing whether the movant has met this burden, the court should view the evidence and all factual inferences in the light most favorable to the party opposing the motion.

The party opposing the motion may not simply rest upon mere allegations or denials of the pleadings; after the moving party has met its burden of coming forward with proof of the absence of any genuine issue of material fact, the nonmoving party must make a sufficient showing to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Poole v. Country Club of Columbus, Inc.*, 129 F.3d 551, 553 (11th Cir.1997); *Barfield*

*v. Brierton,* 883 F.2d 923, 933 (11th Cir. 1989).

If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial. *Envtl. Def. Fund v. Marsh,* 651 F.2d 983, 991(5th Cir.1981).[1] Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts. *Lighting Fixture & Elec. Supply Co. v. Cont'l Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969). The Court must resolve all ambiguities and draw all justifiable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Here, the parties present no disagreement as to the alleged facts underlying Count 2. Rather, they ask the Court to determine the proper construction of the FCRA.

### III. *Analysis*

The FCRA was enacted "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status...." Fla. Stat. 760.01. The statute neither expressly prohibits pregnancy discrimination nor defines "sex" to include pregnancy.

The Court is bound by the Florida Supreme Court's construction of the FCRA. *CSX Transp., Inc. v. Trism Specialized Carriers, Inc.,* 182 F.3d 788, 791 (11th Cir.1999). Where, as here, no such rulings exist, the Court must follow the opinions of Florida's intermediate courts unless it is "convinced that the highest court would decide otherwise." *Id.*

Two Florida courts of appeal have issued rulings on the present issue, arriving at opposite conclusions. See *O'Loughlin v. Pinchback,* 579 So.2d 788, 791–92 (Fla. 1st DCA 1991) (holding that the FCRA did not reach pregnancy discrimination) and *Carsillo v. City of Lake Worth,* 995 So.2d 1118 (Fla. 4th DCA 2008) (holding that pregnancy discrimination was prohibited as sex discrimination under the FCRA).

Defendant cites numerous cases in which federal courts in Florida have concluded that the FCRA does not reach pregnancy discrimination. *See Duchateau v. Camp Dresser & McKee, Inc.,* 822 F.Supp.2d 1325 (S.D.Fla.2011) (holding that under Florida law, the FCRA does not include a cause of action for pregnancy discrimination); *Frazier v. T–Mobile USA, Inc.,* 495 F.Supp.2d 1185, 1187 (M.D.Fla. 2003) ("This Court is of the opinion that the FCRA does not provide for a claim of pregnancy-based discrimination."); *Boone v. Total Renal Laboratories, Inc.,* 565 F.Supp.2d 1323, 1326 (M.D.Fla.2008) ("This Court agrees with those courts that have found that ... the [Florida] legislature did not intend to include a proscription on pregnancy discrimination in the FCRA."); *Swiney v. Lazy Days R.V. Ctr. Inc.,* 2000 WL 1392101 (M.D.Fla.2000) (dismissing claim for pregnancy discrimination under the FCRA); *Fernandez v. Copperleaf Golf Club Cmty. Ass'n, Inc.,* 2005 WL 2277591, at *1 (M.D.Fla.2005) (granting motion to dismiss a claim for pregnancy discrimination under the FCRA where "the fact remains that pregnancy discrimination is not prohibited by the Florida Civil Rights Act and therefore the state statute provides no remedy for pregnancy discrimination."); *Whiteman v. Cingular Wireless, LLC,* 273 Fed.Appx. 841 (11th Cir.2008) (affirming summary judgment for employer where district court

---

**1.** Decisions of the United States Court of Appeals for the Fifth Circuit entered before October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

found that pregnancy was not a protected class under the FCRA.[2] The Court has also considered opinions by federal courts finding a cause of action for pregnancy discrimination under the FCRA, including *Terry v. Real Talent, Inc.*, 2009 WL 3494476, at *2 (M.D.Fla.2009) (concluding, in light of *Carsillo, supra,* that the FCRA does provide a cause of action for pregnancy discrimination) and *Constable v. Agilysis Inc.*, 2011 WL 2446605 (M.D.Fla.2011) (citing *Terry, supra,* to reach the same holding). The Court agrees with the courts that have concluded that the FCRA does not prohibit pregnancy discrimination.

The opposite conclusions that the Florida intermediate courts reached in *O'Loughlin* and *Carsillo, supra,* turns on these courts interpretation of the impact of a 1978 amendment by Congress to Title VII. In *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the United States Supreme Court held that Title VII, as it then read, did not prohibit pregnancy discrimination. Two years later, Congress enacted the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) ("PDA"), amending Title VII to define "sex" as including pregnancy. *Id.* Florida's legislature has enacted no such amendment to the FCRA.

In *O'Loughlin,* the appellate court began its analysis of whether the Florida Human Rights Act ("FHRA") of 1977 (as the FCRA was then titled) should be interpreted as prohibiting pregnancy discrimination by citing the well-settled rule of statutory construction under which a state law "patterned on a federal law on the same subject is accorded the same construction as in the federal courts to the extent the construction is harmonious with the spirit of the Florida legislation." 579 So.2d at 791. The court then noted

that the FHRA was patterned on the federal Civil Rights Act of 1964, which the U.S. Supreme Court in *Gilbert, supra,* had recently held as not extending to pregnancy discrimination. *Id.* Finally, the Court observed that while Congress had amended Title VII by enacting the PDA, the Florida legislature had not similarly acted. *Id.* Thus, the appellate court interpreted the FHRA as the *Gilbert* Court had interpreted the *pre*-amendment Title VII, that is, as not including a cause of action for pregnancy discrimination. *See id.* at 792 (concluding that "Florida law offers less protection to its citizens than does the corresponding federal law.").

In *Carsillo,* the court interpreted the PDA to support the finding of a private cause of action in the FCRA. When Congress enacted the PDA in the wake of *Gilbert,* the appellate court commented, Congress explained that it had intended to prohibit pregnancy discrimination when it passed Title VII in 1964. 995 So.2d at 1121. Because it was the intent of Congress, as expressed in the PDA, to prohibit pregnancy discrimination in Title VII, and, under established case law, Florida statutes patterned after federal statutes in the same manner that the federal statutes are construed, *Carsillo* concluded that the 1972 prohibition of "sex discrimination" in the HRA included discrimination based on pregnancy. *Id.*

In view of the Florida legislative history after *Gilbert,* the Court is convinced that the state legislature has never included a cause of action for pregnancy discrimination in either the current or the previous incarnations of the FCRA. In 1977, the year after the *Gilbert* Court held that Title VII did not extend to pregnancy discrimination, the Florida legislature amended the Florida Human Relations Act, chang-

---

**2.** Defendant also cites several unpublished orders from district court judges, finding no

cause of action for pregnancy discrimination under the FCRA. (D.E. 19, p. 4).

ing its name to the Florida Human Rights Act (FHRA). *"See* Fla. Law 77–341." Additionally, the state legislature expanded the act to prohibit discrimination on the basis of age, disability, or marital status. *See id.* Despite enacting these changes, Florida's lawmakers did not modify the relevant language of the FHRA prohibiting discrimination on the basis of sex although the Supreme Court had interpreted the same provision in Title VII as not reaching pregnancy discrimination. The Florida Supreme Court has held: "When the legislature reenacts a statute which has a judicial construction placed upon it, it is presumed that the legislature is aware of the construction and intends to adopt it, absent a clear expression to the contrary." *Gulfstream Park Racing Ass'n, Inc. v. Dep't of Bus. Reg.,* 441 So.2d 627, 628 (Fla.1983). As the magistrate judge in *Duchateau, supra,* noted, applying this well-settled statutory construction doctrine to the chronology of events post-*Gilbert:* "At that point in time," referring to the 1977 amendment to the Florida statute, "the FHRA continued to provide no cause of action for pregnancy discrimination."

Finally, the Court finds highly relevant the subsequent, and unsuccessful, efforts by Florida lawmakers to amend the statute to extend to pregnancy discrimination. Immediately after Congress amended Title VII by enacting the PDA, the Florida legislature did not provide a cause of action for pregnancy discrimination. Thus, the First District Court of Appeal in *O'Loughlin* construed the FHRA as the *Gilbert* Court had construed the pre-PDA Title VII. One year after *O'Loughlin,* moreover, the Florida legislature enacted Florida Law Chapter 92–177, which renamed the

FHRA, titling it the Florida Civil Rights Act (FCRA) of 1992. Still, the legislature did not alter the provisions that defined sex discrimination, in the wake of a state appellate court decision interpreting these provisions not to extend to pregnancy discrimination. However, in 1994, Florida Senate bill 1596 sought to do precisely this. The bill proposed to amend the FCRA to include claims for "discrimination because of or on the basis of pregnancy." *See* SB 1596, Fla. State Archives, Series 18, Carton 2059. Over the next ten years, Florida lawmakers introduced seven separate bills, each seeking to amend the FCRA to extend to claims of pregnancy discrimination. (D.E. 15–2). Each time, the proposed amendment failed. The Court interprets these repeated legislative efforts to amend the FCRA plainly to demonstrate that Florida's lawmakers understood, as had the appellate court in *O'Loughlin,* that the pertinent state statutes failed to provide a cause of action for pregnancy discrimination. As the relevant statutory provisions have remained the same, this Court is bound to conclude that the FCRA does not extend to pregnancy discrimination.

## IV. Conclusion

For the reasons herein stated, it is hereby ORDERED AND ADJUDGED that Defendant's Motion for Partial Summary Judgment is GRANTED.[3]

---

**3.** The Court is aware that Plaintiff has motioned separately to amend the Complaint (D.E. 25). Plaintiff filed this motion on February 14, 2012, which provides Defendant until March 2, 2012, to file a timely response. Once this deadline has passed, the Court will address, in a separate order, the issue of amending the Complaint, both in light of Plaintiff's motion (D.E. 25) and the Court's instant order granting partial summary judgement to Defendant.