**Brittany GLASS, Plaintiff,**

v.

**CAPTAIN KATANNA'S, INC.,
Pineda Inn Bar & Grill,
Inc., Defendants.**

Case No. 6:13–cv–421–Orl–19GJK.

United States District Court,
M.D. Florida,
Orlando Division.

June 17, 2013.

Mauricio Arcadier, Arcadier & Associates, PA, West Melbourne, FL, for Plaintiff.

Chelsie Joy Flynn, Ford & Harrison, LLP, Orlando, FL, for Defendants.

## *ORDER*

PATRICIA C. FAWSETT, District Judge.

This case comes before the Court on the following:

1. The Motion to Dismiss Count I of Plaintiff's Complaint and Incorporated Memorandum of Law filed by Defendants Captain Katanna's, Inc. and Pineda Inn Bar & Grill, Inc. (Doc. No. 9, filed Apr. 17, 2013); and

2. The Response to Defendants' Motion to Dismiss filed by Plaintiff Brittany Glass (Doc. No. 11, filed May 1, 2013).

### INTRODUCTION

On March 15, 2013, Plaintiff Brittany Glass ("Plaintiff") initiated this action against her former employers, Captain Katanna's, Inc. and Pineda Inn Bar & Grill,

Inc. ("Defendants"), alleging pregnancy discrimination claims pursuant to the Florida Civil Rights Act, Florida Statutes, Chapter 760 (the "FCRA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"). (Doc. No. 1 at ¶¶ 14–23 ("Count One"); *id.* ¶¶ 24–27 ("Count Two")). Plaintiff alleges the following facts in support of her pregnancy discrimination claims:

(1) Defendants hired Plaintiff on May 11, 2011 to work as a bartender (*id.* ¶ 6);

(2) From May 11, 2011 through February 27, 2012, "Plaintiff maintained a discipline-free employment record" (*id.* at ¶ 8);

(3) On February 27, 2012, Plaintiff informed Defendants that she was pregnant (*id.* at ¶ 7);

(4) Defendants advised Plaintiff that she could not tend bar because she was pregnant, and they required her to provide a note from her doctor stating that she was "fit for duty" (*id.* at ¶¶ 16–17);

(5) On March 23, 2012, Plaintiff provided Defendants with a doctor's note which stated that Plaintiff could perform her work (*id.* at ¶ 17); and

(6) On or about the same day that Plaintiff provided the doctor's note to Defendants, the Defendants terminated

Plaintiff's employment (*id.* at ¶¶ 9, 19–20).

On April 17, 2013, Defendant filed a Motion to Dismiss Count One (Doc. No. 9 (the "Motion")), and Plaintiff filed her Response in Opposition to Defendants' Motion on May 1, 2013 (Doc. No. 11 (the "Response")).[1] The Motion and Response address a discrete issue of law: whether pregnancy discrimination claims are cognizable under the FCRA. Citing to cases from this Court, the Federal District Court for the Southern District of Florida, and the First and Third District Courts of Appeal for the State of Florida, Defendants argue that pregnancy discrimination cases are not cognizable. (Doc. No. 9.) Taking the opposite position, Plaintiff points to cases from this Court, the Federal District Court for the Northern District of Florida, and the Second and Fourth District Courts of Appeal for the State of Florida. (Doc. No. 11.) After consideration of the conflicting law on the issue,[2] the Court determines that pregnancy discrimination claims are cognizable under the FCRA. Accordingly, the Court will deny the Motion.

THE LEGAL STANDARDS AND ANALYSIS

### I.   The Split of Authority in the Florida District Courts of Appeal

Like Title VII, the FCRA prohibits "certain employers from discriminating

---

1. In determining the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and decide whether the plaintiff has stated a plausible claim to relief. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)); *Jackson v. BellSouth Telecomms.,* 372 F.3d 1250, 1262 (11th Cir. 2004). Here, there is no dispute that the factual allegations are sufficient to state a claim for pregnancy discrimination. Rather, the dispute between the parties concerns interpretation of Florida law.

2. Recently, the Eleventh Circuit noted that the issue of whether the FCRA recognizes pregnancy discrimination claims "is an open question." *Hubbard v. Meritage Homes of Fla., Inc.,* No. 12–15172, 520 Fed.Appx. 859, 2013 WL 2359065 (11th Cir. May 30, 2013); *DuChateau v. Camp, Dresser & McKee, Inc.,* 713 F.3d 1298, 1301 (11th Cir.2013) (declining to "decide" the "issue" of whether the FCRA "provides a cause of action for pregnancy discrimination"). *See generally,* Donna L. Eng., *The Unsettled State of Pregnancy Discrimination Claims Under the Florida Civil Rights Act of 1992,* 86 FLA. B.J. 54 (Oct. 2012).

against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's ... sex." *Hubbard v. Meritage Homes of Fla., Inc.,* No. 12–15172, 520 F.Supp.2d 859, 862, 2013 WL 2359065, *3 (11th Cir. May 30, 2013)(quoting 42 U.S.C. § 2000e–2(a)(1)); § 760.10(1)(a) Fla. Stat. (2012). Pursuant to the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k) (the "PDA"), Title VII was amended to define the phrase "because of sex" or "on the basis of sex" to include "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k).

After the PDA was enacted, the FCRA was not amended to include a definition of "because of sex" that explicitly includes "pregnancy, childbirth, or related medical conditions." As explained below, the absence of such an amendment is the primary basis courts have cited for the conclusion that the FCRA does not permit pregnancy discrimination claims. *Delva v. Cont'l Group,* 96 So.3d 956 (Fla. 3d DCA 2012); *O'Loughlin v. Pinchback,* 579 So.2d 788 (Fla. 1st DCA 1991). In contrast, courts which have held that pregnancy discrimination claims are cognizable under the FCRA point to a plain reading of the statutory language "because of sex," the Florida legislature's directive to liberally construe the FCRA, the legislative history, as well as the long-standing and consistent construction of the FCRA by Florida's Commission on Human Relations (the "Commission"). *Carsillo v. City of Lake Worth,* 995 So.2d 1118 (Fla. 4th DCA 2008); *Carter v. Health Mgmt. Assoc.,* 989 So.2d 1258 (Fla. 2d DCA 2008); *e.g., Wright v. Sandestin Invests., LLC,* 914 F.Supp.2d 1273, 1281–82 (N.D.Fla.2012). As further explained below, this Court finds the latter courts' analyses to be more persuasive and consistent with how the Florida Supreme Court is likely to resolve the issue.[3]

## A. Florida's First District Court of Appeal

Florida's First District Court of Appeal was the first court to discuss whether discrimination based on "sex" includes pregnancy discrimination under Florida law.[4] *O'Loughlin,* 579 So.2d at 791–92. The matter came to the *O'Loughlin* Court on appeal from a determination by the Commission that a county sheriff was liable under the Florida Human Rights Act (the "FHRA")[5] and Title VII for discriminating against a female correctional officer due to her pregnancy. *Id.* at 791 (summarizing the Commission's decision that "an unlawful employment practice was committed by the employer when [the officer] was discharged on the bases of her pregnancy"). The *O'Loughlin* Court upheld the Commission's liability determina-

3. The Federal District Courts also are in disagreement concerning whether pregnancy discrimination claims are cognizable under Florida law. This Court will not focus on those decisions, however, because a federal court's disagreement with a state court decision is not a "persuasive indication that the Florida Supreme Court" would decide the issue differently than a state intermediate appellate court. *McMahan v. Toto,* 311 F.3d 1077, 1080 (11th Cir.2002) (quoting *Tobin v. Mich. Mut. Ins. Co.,* 398 F.3d 1267, 1272 (11th Cir.2005), *certified question answered,* 948 So.2d 692 (Fla.2006)); *e.g. Horowitch v.*

*Diamond Aircraft Indus., Inc.,* 645 F.3d 1254, 1261–62 (11th Cir.2011) (declining to follow Eleventh Circuit's prior interpretation of Florida law due to a contrary decision from a Florida intermediate appellate court).

4. The First District Court of Appeal is located in the panhandle of Florida, and it is headquartered in Tallahassee.

5. The FHRA was a predecessor to the FCRA. *Carsillo v. City of Lake Worth,* 995 So.2d 1118, 1120–21 (Fla. 4th DCA 2008) (examining the statutory history of the FCRA).

tion; however, it also engaged in a preemption analysis and concluded Title VII afforded greater protection for pregnancy discrimination than was provided under the FHRA.[6]

Without first identifying any ambiguity in the text of the FHRA, the *O'Loughlin* Court noted the "long-standing rule of statutory construction which recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as in the federal courts to the extent the construction is harmonious with the spirit of the Florida legislation." *O'Loughlin*, 579 So.2d at 791. Based on this "rule of statutory construction," the *O'Loughlin* Court reasoned that Title VII afforded more protection for female employees than was provided under the FHRA:

> It is undisputed that [the FCRA] is patterned after Title VII.... *School Bd. of Leon County v. Weaver*, 556 So.2d 443 (Fla. 1st DCA 1990). Section 760.10(1)(a), Florida Statutes, provides in part:
>
>> It is an unlawful employment practice for an employer to discharge ... any individual ... because of such individual's race, color, religion, sex, national origin, age, handicap, or marital status.
>
> In *General Elec. Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976), the Supreme Court held that discrimination on the basis of pregnancy was not sex discrimination under Title VII. However, in 1978, in response to the *Gilbert* decision, Congress amended Title VII by enacting the [PDA]. The PDA specifies that discrimination on the basis of pregnancy is sex discrimination, and therefore violative of Title VII. Florida has not similarly amended [the FCRA] to include a prohibition against pregnancy-based discrimination.

> \*      \*      \*

> Under a [*California Fed. Savs. & Loan Ass'n v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) ] preemption analysis, Florida's law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress ***by not recognizing that discrimination against pregnant employees is sex-based discrimination*** .... Thus, we conclude that the [FCRA], specifically Section 760. 10, Florida Statutes, is preempted by Title VII ..., 42 U.S.C. § 2000e–2 to the extent that Florida's law offers less protection to its citizens than does the corresponding federal law.

*Id.* at 791–92 (emphasis added) (citations omitted).[7] The O'Loughlin Court then analyzed the pregnancy discrimination claim in accordance with Title VII law, and it affirmed the Commission's finding of liability but remanded for a determination of the appropriate relief. *Id.* at 796.

---

**6.** The *O'Loughlin* Court did not indicate whether the preemption issue was first considered by the Commission, whether a party raised the issue, or whether it simply considered the issue *sua sponte*. *O'Loughlin*, 579 So.2d at 791.

**7.** The *O'Loughlin* Court's preemption analysis has been criticized and rejected by numerous courts. *Boone v. Total Renal Labs., Inc.*, 565 F.Supp.2d 1323, 1326–27 (M.D.Fla.2008) (noting that preemption is not an issue to be determined by state courts, and reasoning that "Title VII is not undercut or diminished

by the existence of the FCRA's lesser protections"); *e.g.*, *Wynn v. Fla. Auto. Servs., LLC*, No. 3:12cv122, 2012 WL 4815688 (M.D.Fla. Oct. 10, 2012) (rejecting *O'Loughlin* and following *Carsillo*); *Wright v. Sandestin Invests., LLC*, 914 F.Supp.2d 1273, 1281–82 (N.D.Fla. 2012) (predicting that the Florida Supreme Court will agree with the *Carsillo* decision and reject *O'Loughlin* ). Indeed, *Delva* is the only Florida District Court of Appeal to agree with *O'Loughlin* that the FCRA does not extend its protections to those who are discriminated against on the basis of pregnancy.

### B. Florida's Fourth District Courts of Appeal [8]

Florida's Fourth District Court of Appeal was presented with the question of whether pregnancy discrimination claims are cognizable under the FCRA in *Carsillo*. *Carsillo* 995 So.2d at 1119–21. The trial court in *Carsillo* held that the FCRA "does not prohibit discrimination based on pregnancy," and it granted the defendant employer's motion for summary judgment on that ground. *Id.* at 1119. The appellate court in *Carsillo* reversed and held that the FCRA "bars such discrimination." *Id.* In so holding, the *Carsillo* appellate court noted that the *O'Loughlin* Court's preemption analysis has caused "conflict" in the federal district courts concerning whether the FCRA permits pregnancy discrimination claims. *Id.* at 1120. The *Carsillo* appellate court held that the federal district courts' interpretation of *O'Loughlin* and the FCRA was wrong:

> Although *O'Loughlin* involved a claim for pregnancy discrimination under the [FHRA], some federal district courts have interpreted *O'Loughlin* as not allowing relief under the [FCRA] for discrimination based on pregnancy, because the [FCRA] was not amended [after the PDA was enacted].... This demonstrates, according to [defendant], that the Florida legislature did not intend to protect pregnancy discrimination as sex discrimination. We do not agree. We conclude that the fact that Congress made clear in 1978 that its intent in the original enactment of Title VII in 1964 was to prohibit discrimination based on

pregnancy as sex discrimination, *it was unnecessary for Florida to amend its law to prohibit pregnancy discrimination.*

> \*   \*   \*

> The [FCRA] was originally enacted as the Florida Human Relations Act in 1969 and it prohibited discrimination based on "race, color, religion, or national origin." An amendment added a prohibition against "sex" discrimination in 1972. Other classifications were added in 1977, when the legislature renamed it the Human Rights Act of 1977. It was renamed the Florida Civil Rights Act in 1992. As we noted earlier, the [FCRA] has been patterned after the federal statute, and ... this means that the [FCRA] will be given the same construction as the federal statute.

> [W]hen Congress passed the PDA in 1978, it explained that *it had intended to prohibit discrimination based on pregnancy when it enacted Title VII in 1964.* Because it was the intent of Congress in 1964 to prohibit this discrimination, and under Jackson we construe Florida statutes patterned after federal statutes in the same manner that the federal statutes are construed, it follows that *the sex discrimination prohibited in Florida since 1972 included discrimination based on pregnancy.* This conclusion is also consistent with the expressed intent of our legislature that our statute is to be liberally construed for victims of employment discrimination.

*Id.* at 1120–21 (emphasis added, citations omitted).[9]

---

8. The Fourth District Court of Appeal is located in southeast Florida, and it is headquartered in West Palm Beach.

9. The federal district courts which find that pregnancy discrimination is prohibited under the FCRA rely on the *Carsillo* decision. *Constable v. Agilysis, Inc.,* No. 8:10cv1778, 2011

WL 2446605, \*6 (M.D.Fla. Jun. 15, 2011) (holding that the "FCRA does provide a cause of action for pregnancy discrimination"); *e.g.,* *Terry v. Real Talent Inc.,* No. 8:09–cv–1756, 2009 WL 3494476 (M.D.Fla. Oct. 27, 2009) (denying motion to dismiss FCRA pregnancy discrimination claim and finding that *Carsillo* clarified Florida law).

## C. Florida's Third District Court of Appeal

The Third District Court of Appeal is the only other Florida appellate court to squarely address the issue of whether pregnancy discrimination claims are cognizable under the FCRA.[10] *Delva*, 96 So.3d at 957–58. The trial court in *Delva* dismissed the plaintiff's FCRA claim on the ground that pregnancy discriminations claims are not cognizable under the FCRA. *Id.* at 957. The *Delva* Court affirmed the dismissal based on its adoption of *O'Loughlin* as a "better reasoned decision" than *Carsillo*. *Id.* at 958. The *Delva* Court also certified its decision as being in conflict with *Carsillo*. *Id.*

## D. Florida's Second District Court of Appeal

The Second District Court of Appeal has not reached the dispositive issue of whether pregnancy discrimination claims are cognizable under the FCRA.[11] However, in *Carter*, Florida's Second District Court of Appeal concluded that it would be objectively reasonable for a plaintiff to believe that pregnancy discrimination claims are cognizable under the FCRA. *Carter*, 989 So.2d at 1261–62 (reversing order dismissing FCRA retaliation claim based on the plaintiff's initial charge of pregnancy discrimination). In so holding, the *Carter* Court emphasized that the Commission has long recognized pregnancy discrimination claims under the FCRA:

> [Plaintiff's] original belief that [defendant] had engaged in an unlawful employment practice was objectively reasonable when measured against the [Commission's] interpretation of the FCRA on the issue of pregnancy discrimination.... The [Commission] is authorized "[t]o receive, initiate, investigate, seek to conciliate, hold hearings on, and act upon complaints alleging any discriminatory practice, as defined by the [FCRA]." § 760.06(5) FLA. STAT. In the exercise of its role under the FCRA, the [Commission] has taken the position that "[w]hile there is no specific prohibition against discrimination based on pregnancy in the [FCRA], pregnancy-based discrimination is prohibited by the [FCRA] within the context of 'sex' discrimination." Thus the [Commission's] interpretation of the FCRA provided ample support for an objectively reasonable belief by [Plaintiff] that pregnancy discrimination was covered under the FCRA.

*Id.* at 1264–66 (reasoning that the split of authority provided additional support for an objectively reasonable belief that the FCRA covers pregnancy discrimination).

## II. Resolving Disputed Issues of of Florida Law

When faced with a question of Florida law,[12] this Court is bound to follow

---

**10.** The Third District Court of Appeal is located in southern Florida, and it is headquartered in Miami.

**11.** The Second District Court of Appeal is located in on the west coast of Florida, and it is headquartered in Lakeland. Like the Second District Court of Appeal, the Fifth District Court of Appeal, which is located in central Florida and is headquartered in Daytona Beach, also has not yet addressed the question of whether pregnancy discrimination claims may be asserted under the FCRA.

**12.** This Court exercises supplemental jurisdiction over Plaintiff's FCRA claim. *See* 28

U.S.C. § 1367. Accordingly, Florida law applies to any issue not governed by the Constitution or treaties of the United States or Acts of Congress. 28 U.S.C. § 1652 ("The laws of the several states ... shall be regarded as rules of decision in civil action in the courts of the United States, in cases where they apply."); *Erie R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Flava Works, Inc. v. City of Miami, Fla.*, 609 F.3d 1233, 1237 (11th Cir.2010); *Wiand v. Morgan*, 919 F.Supp.2d 1342, 1369–70 (M.D.Fla.2013); *see also* Wright, Miller & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 2d § 4520.

the decisions of the Florida Supreme Court. *C.I.R. v. Bosch's Estate*, 387 U.S. 456, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967); *CSX Transp. Inc. v. Trism Specialized Carriers, Inc.*, 182 F.3d 788, 791 (11th Cir.1999). Absent a clear decision from the Florida Supreme Court, this Court is bound to follow decisions of Florida's " 'intermediate appellate courts unless there is some persuasive indication that the [Florida Supreme Court] would decide the issue differently.' " [13] *Nunez v. Geico Gen. Ins. Co.*, 685 F.3d 1205, 1210 (11th Cir.2012) (quoting *McMahan v. Toto*, 311 F.3d 1077, 1080 (11th Cir.2002); *e.g.*, *Stoner v. New York Life Ins. Co.*, 311 U.S. 464, 61 S.Ct. 336, 85 L.Ed. 284 (1940)).

As noted *supra*, Florida's District Courts of Appeal are in disagreement concerning the issue at hand, and no overwhelming authority can be discerned among the few Florida District Court decisions on point.[14] (*Supra*, The Legal Standards and Analysis, Part I.) Under such circumstances, this Court must predict how the Florida Supreme Court would resolve the disagreement. *Vandenbark v. Owens–Illinois Glass Co.*, 311 U.S. 538, 61 S.Ct. 347, 85 L.Ed. 327 (1941); *Trail Builders Supply Co. v. Reagan*, 409 F.2d 1059, 1061 (5th Cir.1969);[15] Charles Alan Wright, LAW OF FEDERAL COURTS 374 (4th ed.1983). In making such a prediction, this Court may consider any authority that the Florida Supreme Court

would consider. *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1133 (11th Cir. 2010) (noting that all "data may be considered to the extent they indicate how the Florida Supreme Court might rule on an issue"); *Hood v. Dun & Bradstreet, Inc.*, 486 F.2d 25 (5th Cir.1973); *Jackson v. Sam Finley, Inc.*, 366 F.2d 148 (5th Cir. 1966) (describing obligation to carefully examine rules of construction and substantive approach of state court); *Putman v. Erie City Mfg. Co.*, 338 F.2d 911, 917 (5th Cir.1964) (explaining that courts should consider "all data … keeping in mind that it must choose the rule which it believes the state court, from all that is known about its methods of reaching decisions[,] is likely in the future to adopt").

### III. Statutory Interpretation

Under Florida law, "statutory analysis" is guided by "legislative intent." *Johnson v. Fla.*, 78 So.3d 1305, 1310 (Fla. 2012); *Tasker v. Fla.*, 48 So.3d 798, 804 (Fla.2010); *Fla. Dep't of Children & Family Servs. v. P.E.*, 14 So.3d 228, 234 (Fla. 2009). And, " 'legislative intent is determined primarily from the text' of the statute." *Johnson*, 78 So.3d at 1310 (quoting *Continental Cas. Co. v. Ryan Inc. Eastern*, 974 So.2d 368, 374 (Fla.2008)). "Where the statute's language is clear or unambiguous, courts need not employ principles of statutory construction to determine and effectuate legislative intent."[16] *Fla. Dep't of Children & Family Servs.*, 14 So.3d at

**13.** "The Florida Supreme Court has specifically approved this rule by holding that '[t]he decisions of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme Court].' " *Nunez*, 685 F.3d at 1210 (quoting *Pardo v. State*, 596 So.2d 665, 666 (Fla.1992)).

**14.** Due to the differing interpretations of the FCRA and the *O'Loughlin* decision, the Court cannot find that an "overwhelming weight of authority" exists. *Nunez*, 685 F.3d at 1206 (finding Florida law "unclear" where law was subject to "varying interpretations" in the "lower Florida state courts"); *e.g.*, *Liberty*

*Mut. Ins. Co. v. Elec. Sys., Inc.*, 813 F.Supp. 802, 805 (S.D.Fla.1993); *e.g. Mitchell v. Young Refining Corp.*, 517 F.2d 1036 (5th Cir.1975).

**15.** The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

**16.** "[C]ourts are 'without power to construe an unambiguous statute in a way which would extend, modify, or limit, its express

234. Rather, a statute "must be given its plain and obvious meaning." *Bennett v. St. Vincent's Med. Center, Inc.,* 71 So.3d 828, 838–39 (Fla.2011) (analyzing "the statutory scheme," including definitional section, and legislative history, and rejecting the First District Court of Appeal's statutory interpretation); *Kephart v. Hadi,* 932 So.2d 1086, 1091 (Fla.2006) ("If the language of a statute is clear and unambiguous, the legislative intent must be derived from the words used without involving rules of construction or speculating as to what the legislature intended."). Thus, the Florida Supreme Court directs that any statutory analysis must begin "with careful consideration of the text of the statutes at issue." *Johnson,* 78 So.3d at 1310 (considering the statute's "plain language, the title of the statutes, and the legislative history" and rejecting the Fourth District Court of Appeal's statutory interpretation).

■ In discerning a statute's plain meaning, the Florida Supreme Court "looks first to the terms' ordinary definitions," which may be "derived from dictionaries." *Metro. Cas. Ins. Co. v. Tepper,* 2 So.3d 209, 214 (Fla.2009) (citing MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY to determine common meaning of statutory term); *L.B. v. State,* 700 So.2d 370, 372 (Fla.1997) ("[A] court may refer to a dictionary to ascertain the plain and ordinary meaning which the legislature intended to ascribe to the term."); *e.g., State v. Bodden,* 877 So.2d 680, 685 (Fla.2004) (noting that the courts presume that the legislature knows "the meaning of words and the rules of grammar," so effect is given to "generally accepted construction, not only to the phraseology of an act, but to the manner in which it is punctuated").

■ The Florida Supreme Court also examines the legislative history of a stat-

ute when determining the statute's meaning. *Knowles v. Beverly Enterprises–Florida, Inc.,* 898 So.2d 1, 10 (Fla.2004) ("[I]t is well settled that courts will consider the "history of a statute as an aid in determining the Legislature's intent.'") While legislative history cannot alter the plain meaning of a statute, the Florida Supreme Court frequently "has relied on the plain meaning of statutes *and* legislative history in determining the legislature's intent." *Fla. Convalescent Ctrs. v. Somberg,* 840 So.2d 998, 1003 (Fla.2003) (citing cases). Further, the Florida Supreme Court has explained that "[s]ometimes it may be appropriate to consider a subsequent amendment to clarify original legislative intent of a statute if such amendment was enacted soon after a controversy regarding the statute's interpretation arose." *McKenzie Check Advance of Fla., LLC v. Betts,* 928 So.2d 1204, 1210 (Fla. 2006). However, if there is a substantial time lapse between statutory enactment and an amendment, then the amendment permits no "helpful inference concerning the original intent of a statutory enactment." *Id.* (determining that "seven years is too long to view the amendment as merely a clarification of legislative intent"); *Parole Comm.'n v. Cooper,* 701 So.2d 543, 544–45 (Fla.1997) (concluding that ten years is too long to be an affirmation of prior legislative intent).

■■ If statutory language "is ambiguous and capable of different meanings," the Florida Supreme Court applies "established principles of statutory construction to resolve the ambiguity." *Bennett,* 71 So.3d at 843. Indeed, "Florida case law contains a plethora of rules and extrinsic aids to guide courts in their efforts to discern legislative intent from ambiguously worded statutes." *Holly v. Auld,* 450 So.2d 217, 219 (Fla.1984). For instance,

terms or its reasonable and obvious implica-      tions.'" *Bennett,* 71 So.3d at 839.

"where a statute is remedial in nature, it should be liberally construed to 'preserve and promote access to the remedy intended by the Legislature.'" *Knowles v. Beverly Enterprises–Florida, Inc.*, 898 So.2d 1, 7 (Fla.2004) (quoting *Joshua v. City of Gainesville*, 768 So.2d 432, 435 (Fla.2000) (holding that chapter 760, Florida Statutes, relating to employment discrimination, is remedial and requires a liberal construction to preserve and promote access to the remedy intended by Legislature)).[17]

▮▮▮▮ The Florida Supreme Court also "follows a deferential principle of statutory construction" when a statute "is subject to varying interpretations and that statute has been interpreted by the executive agency charged with enforcing the statute." *GTC, Inc. v. Edgar*, 967 So.2d 781, 785–90 (Fla.2007) (deferring to agency's "reasonable" interpretation of ambiguous statute); *Level 3 Commc'ns, LLC v. Jacobs*, 841 So.2d 447, 450 (Fla.2003) ("An agency's interpretation of the statute that it is charged with enforcing is entitled to great deference."). Further, the Florida Supreme Court will presume that the legislature knew "the existing law when a statute is enacted, including 'judicial decisions on the subject concerning which it subsequently enacts a statute.'" *Seagrave v. Fla.*, 802 So.2d 281, 290 (Fla.2001). Finally, a Florida law mirrored after a federal law generally will be construed in conformity with the federal law. *Brand v.*

*Fla. Power Corp.*, 633 So.2d 504, 507–09 (Fla. 1st DCA 1994).

## IV. The Meaning of "Sex" Under the FCRA

The pertinent provisions of the FCRA state:

(1) It is an unlawful employment practice for an employer:

 (a) *To discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual* with respect to compensation, terms, conditions, or privileges of employment, *because of such individual's* race, color, religion, *sex,* national origin, age, handicap, or marital status.

 (b) To limit, segregate, or classify employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities, or adversely affect any individual's status as an employee, *because of such individual's* race, color, religion, *sex,* national origin, age, handicap, or marital status.

§ 760.10, FLA. STAT. (2012) (emphasis added).

▮▮▮ The FCRA does not define the word "sex." Accordingly, it is appropriate to consider the common definition of "sex" which the Florida Legislature is presumed to know. *Metro. Cas. Ins. Co.*, 2 So.3d at 214; *L.B*, 700 So.2d at 372. "Sex" is de-

---

**17.** The Florida Supreme Court also instructs lower courts to avoid statutory "readings that would render part of a statute meaningless." *Bennett,* 71 So.3d at 839 (instructing that courts "must give full effect to all statutory provisions"); *Metro. Cas. Ins. Co. v. Tepper,* 2 So.3d 209, 215 (Fla.2009) ("[W]ords in a statute are not to be construed as superfluous if a reasonable construction exists that gives effect to all words."). And, "related statutory provisions should be read together to determine legislative intent, so that if from a view

of the whole law, or from other laws *in pari materia* the evident intent is different from the literal import of the terms employed to express it in a particular part of the law, that intent should prevail...." *Golf Channel v. Jenkins,* 752 So.2d 561, 564 (Fla.2000) (internal quotation marks omitted); *GTC, Inc. v. Edgar,* 967 So.2d 781, 787 (Fla.2007) ("It is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole.").

fined as "[t]he property or quality by which many living things are classified *according to their reproductive functions.*" WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 1068 (1994) (emphasis added). Alternatively, sex is defined as "[t]he sexual urge or instinct as manifested in behavior." (*Id.*) And, "the attraction of one sex for another." WEBSTER'S NEW WORLD DICTIONARY 438 (1979). "Sex" is defined in Black's Law Dictionary as (1) "[t]he sum of the peculiarities of structure and *function* that distinguish a male from a female organism;" and (2) "sexual intercourse." BLACK'S LAW DICTIONARY 1498 (9th ed. 2009) (emphasis added).

The focus on reproductive functions as a means of defining "sex" supports the notion that Florida legislators would have understood "sex" to include pregnancy as a function unique to the female sex. Accordingly, a plain reading of the phrase "to discharge or to fail or refuse to hire any individual, or otherwise to discriminate against any individual ... because of such individual's ... sex" should be understood to ban discrimination against any individual "because of such individual's" reproductive functions (*e.g.*, pregnancy). To hold

otherwise would be contrary to the Florida Legislature's directive to construe the FCRA "according to the fair import of its terms" and to "liberally" construe the FCRA "to further the general purposes stated in this section ...."[18] § 760.01(3) FLA. STAT (2012); *e.g., Maggio v. Fla. Dep't of Labor & Employment Sec.,* 899 So.2d 1074, 1076–77 (Fla.2005); *Woodham v. Blue Cross & Blue Shield of Fla., Inc.,* 829 So.2d 891, 894 (Fla.2002).[19]

Because the legislative intent is discernable from a plain reading of the statutory language, the Court need not resort to canons of statutory construction to interpret the statute. Nonetheless, the Court notes that its reading of the FCRA is consistent with the legislative history and the practice of construing the FCRA consistently with Title VII. *Carsillo* 995 So.2d at 1120–21. Further, the Court's reading of the FCRA is consistent with the interpretation and enforcement practices of the Commission.[20] *Carter,* 989 So.2d at 1264–66; *Mills v. Bay St. Joseph Care & Rehab. Ctr.,* F.C.H.R. Order No. 10–092 (Fla. Comm'n on Human Relations Dec. 15, 2010); *Bailey v. Centennial Employee Mgmt. Corp.,* F.C.H.R. Order No. 02–027

**18.** The FCRA identifies the following as the "general purposes" of the legislation: "to secure for all individuals within the state freedom from discrimination because of race, color, religion, sex, national origin, age, handicap, or marital status and thereby *to protect their interest in personal dignity, to make available to the state their full productive capacities,* to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state." § 760.01, FLA. STAT. (2012) (emphasis added). A woman's dignity and full productive capacity are fairly understood to include biological reproduction, especially under an admonition to interpret the statute liberally.

**19.** A contrary ruling also would have the anomalous effect of permitting discrimination

based on an employer's concerns or prejudices regarding a female employee's unique reproductive function, but outlawing discrimination based on an employer's improper prurient interests in a female employee.

**20.** Again, the Florida Supreme Court has made clear that an administrative agency's "interpretation of a statute which it is charged with enforcing is entitled to great deference and will not be overturned unless it is clearly erroneous or contrary to legislative intent." *Fla. Dep't of Revenue v. Fla. Mun. Power Agency,* 789 So.2d 320, 323 (Fla.2001) (citing *Donato v. Am. Tel. Tel. Co.,* 767 So.2d 1146, 1153 (Fla.2000)). The Commission is a Florida administrative agency taxed with enforcing the FCRA in Florida. § 760.06 FLA. STAT. (2012).

(Fla. Comm'n on Human Relations May 31, 2002); *Pinchback v. St. Johns County Sheriff's Dep't,* 7 F.A.L.R. 5369, 5371 (Fla. Comm'n on Human Relations 1985) (" 'Termination of employment because of pregnancy is a recognized discriminatory practice based on sex contrary to the [FCRA's predecessor]' ").[21] Accordingly, this Court predicts that the Florida Supreme Court will reject the *O'Loughlin* and *Delva* decisions and will agree with the Commission and Florida's Fourth District Court of Appeal that discrimination based on pregnancy is an "unlawful employment practice" under the FCRA.

### CONCLUSION

Based on the foregoing it is **ORDERED** and **ADJUDGED** that the Motion to Dismiss Count I of Plaintiff's Complaint and Incorporated Memorandum of Law filed by Defendants Captain Katanna's, Inc. And Pineda Inn Bar and Grill, Inc. (Doc. No. 9, filed Apr. 17, 2013) is **DENIED.**

**21.** *E.g., McNight v. Sears Termite & Pest Control,* No. 00–3845, 2001 WL 634584, *6 (Fla. Div. of Admin. Hearings Jun. 6, 2001) (holding that the plaintiff "is a member of a protected class based upon her gender and pregnancy"); *Fuller v. Progressive Am. Ins. Co.,* No. 89–0480, 1989 WL 644301 (Fla. Div. of Admin. Hearings Dec. 4, 1989) ("[I]t is difficult to see how discrimination on the account of pregnancy or child birth does not equate to discrimination on account of the discrimination victim's sex.").